RICHARD MILLER AND HIS WIFE, BRENDA MILLER v. C. W. MYERS TRADING POST, INC.

No. 8621DC1059

(Filed 5 May 1987)

1. **Landlord and Tenant § 8— premises fit for habitation—implied warranty**

    By the enactment in 1977 of the Residential Rental Agreement Act, the legislature implicitly adopted the rule that a landlord impliedly warrants to the tenant that rented or leased residential premises are fit for human habitation.

2. **Landlord and Tenant § 19— noncompliance with Residential Rental Agreement Act—action for rent proper**

    A tenant may bring an action for recovery of rent paid based on the landlord's noncompliance with N.C.G.S. § 42-42(a).

3. **Landlord and Tenant § 19— action for rent abatement—three year statute of limitations applicable**

    The three year statute of limitations applied to plaintiffs' action for a retroactive rent abatement for defendant's alleged violations of the Residential Rental Agreement Act.

Miller v. C. W. Myers Trading Post, Inc.

4. **Landlord and Tenant § 19— action for rent abatement—three year statute of limitations**

In plaintiffs' action for rent abatement filed on 17 May 1985, plaintiffs would be entitled to recover for any period of their occupancy following 17 May 1982 during which they could establish that the condition of the premises was substandard, regardless of whether the conditions complained of first existed prior to that time, when the city inspector was contacted, or when the premises were inspected.

5. **Landlord and Tenant §§ 8, 19— unfit premises—action for rent abatement—tenant's acceptance of premises no defense**

In plaintiffs' action for rent abatement based on defendant's alleged violation of the Residential Rental Agreement Act, defendant was not entitled to summary judgment on the ground that plaintiffs never expressed dissatisfaction with the premises, since whether plaintiffs provided notification to defendant of needed repairs was a controverted issue of fact, and N.C.G.S. § 42-42(b) provides specifically that the landlord is not released of his obligation to provide fit premises by the tenant's explicit or implicit acceptance of the landlord's defaults.

6. **Landlord and Tenant §§ 8, 19— unfit premises—action for rent abatement—amount of rent below market value—no defense**

The rental or lease of residential premises for a price which is "fair" or below fair rental value does not absolve the landlord of his statutory obligation to provide fit premises and is not a defense to plaintiffs' claims for rent abatement; rather, plaintiff tenants may recover damages in the form of rent abatement calculated as the difference between the fair rental value of the premises if as warranted and the fair rental value of the premises in their unfit condition for any period of the tenant's occupancy during which the finder of fact determines the premises were uninhabitable, plus any special or consequential damages alleged and proved.

7. **Landlord and Tenant §§ 8, 19— unfit premises—action for rent abatement—no punitive damages**

Punitive damages are not recoverable in an action for a contractual remedy based on breach of an implied warranty of habitability when the breach neither constitutes nor is accompanied by tortious conduct.

APPEAL by plaintiffs from *Alexander, Judge.* Judgment entered 5 May 1986 in District Court, FORSYTH County. Heard in the Court of Appeals 30 March 1987.

*John T. Newman for plaintiff appellants.*

*Molitoris & Connolly, by Anne Connolly and Theodore M. Molitoris for defendant appellee.*

Miller v. C. W. Myers Trading Post, Inc.

BECTON, Judge.

Plaintiffs, Richard and Brenda Miller, instituted this action on 17 May 1985 against defendant, C. W. Myers Trading Post, Inc., seeking a retroactive rent abatement for defendant's alleged violations of the Residential Rental Agreement Act. The alleged violations included failure to comply with the Housing Code of the City of Winston-Salem, failure to make repairs necessary to put and keep the rented premises in a fit and habitable condition, and failure to maintain in a good and safe working order and promptly repair all electrical, plumbing, sanitary and other facilities supplied by defendant as required by N.C. Gen. Stat. Sec. 42-42(a)(1), (2) and (4) (1984). Plaintiffs also sought to recover punitive damages, alleging that the number of Housing Code violations and defendant's prolonged failure to make repairs after notice from the City of Winston-Salem and from plaintiffs "evidences a reckless and wanton disregard of the plaintiffs' rights to live in a dwelling fit for human habitation." Defendants answered, denying the material allegations of the Complaint, setting forth several defenses, including the statute of limitations, and counterclaiming for court costs and attorney's fees based on allegations that plaintiffs instituted the action in retaliation for defendant's efforts to sell the house rented by them.

Defendant moved for summary judgment and submitted depositions of both plaintiffs in support of the motion. Plaintiffs filed no additional materials in opposition but relied upon the allegations in their verified Complaint. On 5 May 1986, the trial court entered summary judgment for defendant, dismissing the action on the grounds that there was no genuine issue of material fact. From that judgment, plaintiffs appeal. We reverse as to the claim for a retroactive rent abatement but affirm the judgment against plaintiffs on their claim for punitive damages.

I

The pleadings and depositions considered in the light most favorable to plaintiffs tend to show the following. Beginning in August of 1978, plaintiffs rented and occupied, as tenants of defendant, a house located at 410 Peden Street, Winston-Salem, for $175 per month. From the beginning of their tenancy, the premises were defective in numerous respects, including leaking gutters, rotten porches, torn and fallen screens, loose steps, leaking

plumbing, falling plaster, peeling paint, rotten kitchen cabinets, electrical problems, and a malodorous "cess pool" in the yard. Defendant represented to Mrs. Miller that the premises would be repaired once they were rented. However, despite repeated written requests by plaintiffs, defendant failed to make repairs. On one or more occasions, Mrs. Miller called the city inspector. In May 1984, the Community Development Department found the premises unfit for human habitation due to substandard conditions and violations of the City Housing Code. Some of the deficiencies were corrected in July and November of 1984 and January of 1985, while others remained uncorrected as of 17 May 1985, when this action was filed. As of 22 November 1985, when plaintiffs' depositions were taken, most problems were corrected except a hole under the kitchen sink cabinet, falling plaster in one bedroom, two cracked windows, and the unpleasant smell from the yard.

## II

The sole issue on appeal is whether the trial court erred in granting defendant's motion for summary judgment.

## A

Summary judgment is appropriate only when the materials before the court show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. N.C. Gen. Stat. Sec. 1A-1, Rule 56 (1983); *Kent v. Humphries*, 303 N.C. 675, 281 S.E. 2d 43 (1981). The burden of establishing the lack of any triable issue of fact is on the party moving for summary judgment, and that party's papers are carefully scrutinized while those of the opposing party are regarded with indulgence. *Stroup Sheet Metal Works, Inc. v. Heritage, Inc.*, 43 N.C. App. 27, 258 S.E. 2d 77 (1979). Movant's burden may be met by proving the non-existence of an essential element of plaintiff's claim for relief, *Southerland v. Kapp*, 59 N.C. App. 94, 295 S.E. 2d 602 (1982), or by establishing a complete defense to plaintiff's claim, *Estrada v. Jaques*, 70 N.C. App. 627, 321 S.E. 2d 240 (1984). Summary judgment is also appropriate whenever the pleadings or proof disclose that no cause of action exists. *Williams v. Congdon*, 43 N.C. App. 53, 257 S.E. 2d 677 (1979).

The record fails to disclose the specific grounds upon which summary judgment was deemed appropriate by the trial court.

Therefore we briefly discuss a number of grounds suggested by the pleadings and the briefs.

## B

We first address the propriety of the judgment as to plaintiffs' claim for a retroactive rent abatement.

Although the parties have not expressly raised the issue, we deem it important to consider initially the appropriateness of the theory upon which the plaintiffs have based their claim for relief since defendant's Answer includes a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim, and since summary judgment would be proper if no legally cognizable cause of action exists. Historically, North Carolina adhered to the common law rule of *caveat emptor* in the landlord-tenant context. Landlords had no duty to repair or maintain structures, *Brooks v. Francis,* 57 N.C. App. 556, 291 S.E. 2d 889 (1982), and the law implied no warranty as to the quality or condition of leased premises. *See Gaither v. Hascall-Richards Steam Generator Co.,* 121 N.C. 384, 28 S.E. 546 (1897); *Robinson v. Thomas,* 244 N.C. 732, 94 S.E. 2d 911 (1956); *see generally* Fillette, North Carolina's Residential Rental Agreements Act: New Developments for Contract and Tort Liability in Landlord-Tenant Relations, 56 N.C.L. Rev. 785 (1978). Even when a landlord made express promises to repair, such covenants were considered independent of the tenant's covenant to pay rent. *Id.* at 786.

[1] By the enactment in 1977 of the Residential Rental Agreements Act, N.C. Gen. Stat. Secs. 42-38 *et seq.,* our legislature implicitly adopted the rule, now followed in most jurisdictions, that a landlord impliedly warrants to the tenant that rented or leased residential premises are fit for human habitation. The implied warranty of habitability is co-extensive with the provisions of the Act. *Jackson v. Housing Authority of High Point,* 73 N.C. App. 363, 326 S.E. 2d 295, *disc. review denied,* 313 N.C. 603, 330 S.E. 2d 611 (1985), *aff'd,* 316 N.C. 259, 341 S.E. 2d 523 (1986). Section 42-42 of the Act provides in pertinent part:

  (a) The landlord shall:

    (1) Comply with the current applicable building and housing codes, whether enacted before or after October 1, 1977, to the extent required by the operation of such

codes; no new requirement is imposed by this subdivision (a)(1) if a structure is exempt from a current building code;

(2) Make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition;

(3) Keep all common areas of the premises in safe condition; and

(4) Maintain in good and safe working order and promptly repair all electrical, plumbing, sanitary, heating, ventilating, air conditioning, and other facilities and appliances supplied or required to be supplied by him provided that notification of needed repairs is made to the landlord in writing by the tenant except in emergency situations.

The statute does not make clear what remedies are available for breach of these provisions. (For a thorough discussion of possible remedies and defenses available under the Act, *see generally* Fillette, 56 N.C.L. Rev. 785.) The only existing appellate decisions involving violation of the Act deal with tort actions for personal injury or wrongful death in which a landlord's failure to comply with the statute was considered evidence of negligence. *See Jackson; Brooks v. Francis; O'Neal v. Killett,* 55 N.C. App. 225, 284 S.E. 2d 707 (1981).

[2] This then, is a case of first impression in that we must consider what remedies are available apart from a tort action. We limit our consideration solely to the appropriateness of the rent abatement remedy sought by plaintiffs.

In a pre-Act case, *Thompson v. Shoemaker,* 7 N.C. App. 687, 173 S.E. 2d 627 (1970), this Court held that a tenant could not recover rent payments on the theory that the rented dwelling was maintained by the landlord in violation of the city housing code and was unfit for human habitation, when the tenant had voluntarily continued to pay rent and to occupy the premises with knowledge of the violations. Leading decisions from other jurisdictions have held that recognition of an implied warranty of habitability makes available to tenants the basic common law contract remedies of damages, reformation, and rescission. *See, e.g., Teller v. McCoy,* 162 W.Va. 367, 253 S.E. 2d 114 (1978); *Ber-*

*zito v. Gambino,* 63 N.J. 460, 308 A. 2d 17 (1973); *King v. Moorehead,* 495 S.W. 2d 65 (Mo. App. 1973); *Mease v. Fox,* 200 N.W. 2d 791 (Iowa 1972). A number of courts have expressly recognized, among other remedies, an affirmative cause of action for recoupment of all or part of rents paid, which is available even to a tenant who does not abandon the premises. *See, e.g., Hilder v. St. Peter,* 144 Vt. 150, 478 A. 2d 202 (1984); *Teller v. McCoy; Berzito v. Gambino; Kline v. Burns,* 111 N.H. 87, 276 A. 2d 248 (1971).

G.S. Sec. 42-41 states that the tenant's obligation to pay rent and the landlord's obligation to comply with Section 42-42(a) are "mutually dependent," while Section 42-44(a) provides that "[a]ny right or obligation declared by this Chapter is enforceable by civil action, in addition to other remedies of law and in equity." However, tenants are prohibited from unilaterally withholding rent prior to a "judicial determination" of the right to do so, G.S. Sec. 42-44(c). We construe these provisions to provide an affirmative cause of action to a tenant for recovery of rent paid based on the landlord's noncompliance with G.S. 42-42(a) and, thus, to overrule *Thompson v. Shoemaker.* Plaintiffs have adequately alleged nonfulfillment of defendant's obligations so as to set forth a claim for relief under the statute for breach of the implied warranty of habitability. Therefore, summary judgment was not appropriate on the grounds that plaintiffs failed to set forth a viable cause of action.

[3]    We also reject defendant's contention that plaintiffs' claims are barred by the applicable statute of limitations. Defendant first maintains that the one year statute of limitations established by G.S. Sec. 1-54(2) (1983) applies to this action. We disagree. That section requires commencement within one year of an action "[u]pon a statute, *for a penalty or forfeiture,* where the action is given . . . in whole or in part to the party aggrieved. . . ." (emphasis added). We conclude that the rent abatement remedy sought by plaintiff does not constitute a "penalty or forfeiture" within the meaning of the statute. G.S. Sec. 1-54(2) applies only to actions based on statutes which *expressly* provide for a penalty or forfeiture, the purpose of which is punitive. *See Holley v. Coggin Pontiac, Inc.,* 43 N.C. App. 229, 259 S.E. 2d 1, *disc. rev. denied,* 298 N.C. 806, 261 S.E. 2d 919 (1979). The "forfeiture" of rents sought by plaintiffs in this case is a remedy which is not

spelled out but which is implied from the statute, and which is not punitive but rather in the nature of a restitutionary remedy. Consequently, we hold that the applicable statute of limitations is three years, pursuant to G.S. Sec. 1-52(1) and (2) (1983), and plaintiffs are thus not entitled to recover any rents for occupancy prior to 17 May 1982.

[4] Defendant further argues that, even if a three-year limitation period applies, plaintiffs have failed to establish a genuine issue of fact regarding an actionable violation of the Winston-Salem Housing Code and G.S. Sec. 42-42(a)(1) because the deposition testimony of both plaintiffs indicates that they cannot establish that their complaints to the city or the actions of the city inspector occurred after 17 May 1982. Similarly, defendant maintains that there is no genuine issue of fact regarding defendant's noncompliance with G.S. Sec. 42-42(a)(2) and (4) because both plaintiffs admitted in their depositions that various repairs had been made and that the plumbing, heating, and electrical components all worked, and because neither specified the date that the repairs occurred. We agree with defendant that, in order to be actionable, the alleged violations of the statute must have existed after 17 May 1982. However, in our view, such violations constitute a continuing offense. Thus, plaintiffs would be entitled to recover for any period of their occupancy following 17 May 1982 during which they can establish that the condition of the premises was substandard as measured by the statute, regardless of whether the conditions complained of first existed prior to that time.

Therefore, for purposes of this appeal, neither the date the city inspector was contacted nor the date the premises were inspected is of critical importance. Nor is the fact that repairs had been made as of the date of the deposition determinative of the issues. In their verified Complaint, plaintiffs alleged that the house was found unfit for human habitation and in violation of the City Housing Code by the Community Development Department in May of 1984; that some repairs were made in July and November of 1984, others were made in January of 1985, and other deficiencies ordered corrected by the city were uncorrected at the filing of the Complaint; and that the premises were never in a fit and habitable condition from the beginning of their tenancy until the date the Complaint was filed. We conclude that these allegations are sufficient to raise issues of fact regarding whether, during some period following 17 May 1982, the premises were in

material violation of the local housing code or were otherwise not fit and habitable. Furthermore, the deposition testimony of both plaintiffs generally corroborates these allegations, and we find nothing therein which defeats their claims as a matter of law.

Defendant, in the Answer to plaintiffs' Complaint, alleged that all needed repairs were promptly made, denied that the city found the premises unfit, and alleged that the minor deficiencies cited were promptly corrected. Defendant further alleged, by way of affirmative defense, that all deficiencies in the premises were caused by intentional or negligent acts of the plaintiffs in violation of their obligations as tenants under G.S. Sec. 42-43. However, defendant has presented no evidence which establishes any of these claims or defenses as a matter of law. All are issues of fact for the jury.

[5] Defendant has further asserted that plaintiffs never expressed dissatisfaction with the premises or with the amount of rent, and that the $175 per month rent was fair and below market value. We first note that of the three subsections of G.S. Sec. 42-42(a) which plaintiffs claim were violated, only G.S. Sec. 42-42(a)(4) expressly conditions the landlord's obligations to make repairs upon prior receipt of notification of the need for repairs. Section 42-42(b) provides specifically that the landlord is *not* released of his obligation to provide fit premises by the tenant's explicit or *implicit* acceptance of the landlord's defaults. Moreover, based on the pleadings and depositions in this case, whether plaintiffs provided notification to defendant of needed repairs is a controverted issue of fact. For these reasons, summary judgment was not proper on the grounds that plaintiffs failed to complain.

[6] Defendant's arguments regarding the rental value of the premises likewise do not justify the judgment against plaintiffs. The rental or lease of residential premises for a price that is "fair" or below fair rental value does not absolve the landlord of his statutory obligation to provide fit premises and is not a defense to plaintiffs' claims. The implied warranty of habitability entitles a tenant in possession of leased premises to the value of the premises *as warranted*, which may be greater than the rent agreed upon or paid. *See* Fillette, 56 N.C.L. Rev. at 792. In accordance with leading decisions in other jurisdictions, we adopt the rule that a tenant is liable only for the reasonable value, if

any, of his use of the property in its defective condition while he remains in possession. *See, e.g., Boston Housing Authority v. Hemingway*, 363 Mass. 184, 293 N.E. 2d 831 (1973); *Berzito v. Gambino.* Accordingly, a tenant may recover damages in the form of a rent abatement calculated as the difference between the fair rental value of the premises if as warranted (i.e., in full compliance with G.S. 42-42(a)) and the fair rental value of the premises in their unfit condition for any period of the tenant's occupancy during which the finder of fact determines the premises were uninhabitable, plus any special or consequential damages alleged and proved. *See Hilder v. St. Peter; Teller v. McCoy; Mease v. Fox. See also Andrews & Knowles Produce Co. v. Currin*, 243 N.C. 131, 136, 90 S.E. 2d 228, 231 (1955) (special damages allowed for landlord's breach of implied warranty of quiet enjoyment); *Sloan v. Hart,* 150 N.C. 269, 274, 63 S.E. 1037, 1039 (1909) (special damages allowed for landlord's breach of implied covenant to deliver possession). *See generally* Fillette, 56 N.C.L. Rev. at 792-794.

In the present case, Mrs. Miller testified that the rental value of the property in its unrepaired state was about $50 to $75 a month. Mr. Miller also testified that $175 per month was not a fair amount of rent for the house prior to its repair. This testimony, along with the plaintiff's allegations of violations of the statute, is sufficient to raise a genuine issue of fact as to the amount, if any, that the rental value of the premises as warranted was reduced by defective conditions.

For the foregoing reasons, we conclude that defendant has failed to meet the burden of establishing the non-existence of any triable issue of fact regarding plaintiffs' claim for a retroactive rent abatement. Consequently, we hold that summary judgment was improper as to that claim.

C

[7] We further hold, however, that summary judgment was appropriate as to plaintiffs' claim for punitive damages. The action for a rent abatement for breach of an implied warranty is wholly contractual. The general rule in North Carolina is that punitive damages are not recoverable for breach of contract even though the breach be willful, malicious, or oppressive. *E.g., Newton v. Standard Fire Insurance Co.*, 291 N.C. 105, 229 S.E. 2d 297 (1976);

*Murray v. Allstate Insurance Co.*, 51 N.C. App. 10, 275 S.E. 2d 195 (1981). Furthermore, plaintiffs' claim for relief is based on a statute which makes no provision for punitive damages. We conclude that punitive damages are not recoverable in an action for a contractual remedy based on breach of an implied warranty of habitability when the breach neither constitutes nor is accompanied by tortious conduct.

The judgment against plaintiffs is reversed as to their claim for a rent abatement and affirmed as to their claim for punitive damages.

Affirmed in part and reversed in part.

Chief Judge HEDRICK and Judge WELLS concur.