STATE OF NORTH CAROLINA, EX REL. ROY COOPER, ATTORNEY GENERAL OF NORTH CAROLINA, PLAINTIFF v. RIDGEWAY BRANDS MANUFACTURING, LLC, A NORTH CAROLINA CORPORATION; RIDGEWAY BRANDS, INC.; JAMES C. HEFLIN; FRED A. EDWARDS; AND CARL B. WHITE, DEFENDANTS

No. COA06-422

(Filed 17 July 2007)

**1. Appeal and Error— appealability—dismissal of claims against one defendant—avoiding two trials on same issue—substantial right**

An order dismissing claims against one defendant affected a substantial right and was immediately appealable despite being interlocutory where the liability of codefendants depended upon this defendant's joint and several liability, so that plaintiff faced the possibility of having to undergo two trials on the same issue.

**2. Statutes of Limitation and Repose— amended complaint— expired statute of limitations—no relation back**

The statute of limitations expired as to any claims against defendant Heflin for penalties under N.C.G.S. § 66-291(c) arising from failure to make the escrow deposit required of cigarette manufacturers, and an amended complaint which added him as a defendant did not relate back. The trial court correctly dismissed

the claim for penalties for failure to pay the 2004 escrow deposit, but this dismissal has no effect on other claims.

### 3. Corporations— piercing the corporate veil—allegations sufficient

The allegations in plaintiff's complaint were sufficient to state a claim for piercing the corporate veil, and the trial court erred by granting defendant's motion to dismiss under N.C.G.S. § 1A-1, Rule 12 (b)(6).

### 4. Unfair Trade Practices— cigarette manufacturing—statutory requirements—not covered by unfair practices statute

The trial court did not err by dismissing plaintiff's claim under the Unfair and Deceptive Trade Practices Act arising from the statutory obligation of cigarette manufacturers under N.C.G.S. § 66-291. That statute provides an extensive remedy for failure to comply with its obligations; it was not the legislature's intent to extend the scope of Chapter 75 to include noncompliance with N.C.G.S. § 66-291.

### 5. Corporations— civil conspiracy—independent personal stake of corporate agent

The trial court erred by dismissing plaintiff's claim for civil conspiracy for failure to state a claim upon which relief could be granted. While an allegation that a corporation is conspiring with its agents, employees, or officers is tantamount to accusing a corporation of conspiring with itself, an exception exists if the corporate agent has an independent personal stake in achieving the corporation's illegal objective, as here.

Judge WYNN concurring in part and dissenting in part.

Appeal by the State of North Carolina from order entered 9 December 2005 by Judge Donald L. Smith in Wake County Superior Court. Heard in the Court of Appeals 12 December 2006.

*Attorney General Roy Cooper, by Special Deputy Attorneys General Richard L. Harrison, Karen E. Long, and Melissa L. Trippe, for plaintiff-appellant State of North Carolina.*

*Poyner & Spruill LLP, by J. Nicholas Ellis and Timothy W. Wilson, for defendant-appellees, Ridgeway Brands Manufacturing, LLC and James C. Heflin.*

STATE ex rel. COOPER v. RIDGEWAY BRANDS MFG., LLC

[184 N.C. App. 613 (2007)]

STEELMAN, Judge.

When the dismissal of a suit affects the plaintiff's right to avoid two trials on the same issue, the plaintiff's appeal is not interlocutory. When a plaintiff fails to amend his complaint to add a party defendant until after the expiration of the applicable statute of limitations as to that defendant, the claim cannot relate back to circumvent the statute of limitations. When the allegations in a plaintiff's complaint, taken as true, are sufficient to state a claim for piercing the corporate veil, the trial court's grant of defendant's motion to dismiss is improper. Further, when the application of both N.C. Gen. Stat. § 75-1.1 and N.C. Gen. Stat. § 66-291 creates overlapping supervision, enforcement and liability in a particular area of law, the rationale of *Lindner v. Durham Hosiery Mills, Inc.*, 761 F.2d 162 (4th Cir. 1985), and *Skinner v. E. F. Hutton & Co.*, 314 N.C. 267, 333 S.E.2d 236 (1985), precludes the application of N.C. Gen. Stat. § 75-1.1 to cases of noncompliance with N.C. Gen. Stat. § 66-291. Finally, when the allegations in a plaintiff's complaint, taken as true, are sufficient to state a claim for civil conspiracy, including the allegation that a corporate agent has an independent personal stake in achieving a corporation's illegal objective, the trial court's grant of defendant's motion to dismiss is improper.

## Factual Background

In November 1998, the State of North Carolina ("plaintiff") entered into a Master Settlement Agreement ("MSA") with major domestic cigarette manufacturers. Cigarette manufacturers in North Carolina were required to either sign the MSA or comply with the provisions of N.C. Gen. Stat. § 66-291, which obligated cigarette manufacturers to deposit funds into a qualified escrow account for sales of cigarettes in North Carolina.

Because the trial court dismissed the claims against James C. Heflin ("Heflin") under N.C. Gen. Stat. § 1A-1, Rule 12(b)(6), we treat the allegations in the complaint as true. The complaint sets forth the following allegations.

In early 2001, Heflin formed the corporation later named Ridgeway Brands Manufacturing, LLC ("Ridgeway"). Heflin was an owner and member-manager of Ridgeway, which was located in Stantonsburg, North Carolina, and sold tobacco products largely to Ridgeway Brands, Inc. ("Brands"). Brands was a Kentucky corporation, distributing tobacco products for sale in North Carolina and other states. Fred A. Edwards ("Edwards") and Carl B. White

("White") were owners and active managers of Brands. Heflin, Edwards and White "dominated and controlled [Ridgeway] to further [their] own objectives and those of [Brands][.]"

In late 2002, Heflin, Edwards and White hired Lee Welchons ("Welchons") as the general manager of Ridgeway. Welchons had extensive experience in tobacco manufacturing and was familiar with both the payment obligations of manufacturers pursuant to the MSA and North Carolina escrow statutes.

In early 2003, Heflin, Edwards and White announced the merger of Ridgeway and Brands. The merger, although never formally completed, was accomplished *de facto* between Ridgeway and Brands. In early 2003, Brands became the sole purchaser of cigarettes manufactured by Ridgeway, and Ridgeway became "a corporation without a separate mind, will or existence of its own[,] . . . operated as a mere shell to perform for the benefit of [Heflin] . . . Ridgeway [Brands], Edwards [and] White."

Heflin, Edwards and White exhibited control over Ridgeway in the following ways: (1) establishing the pricing structure of cigarettes that Ridgeway sold to Brands; (2) ignoring Welchon's advice that the pricing structure was "grossly inadequate" to satisfy North Carolina's escrow statute requirements; (3) on one occasion, forbidding Welchons to shut down a cigarette line for repairs; (4) determining in which states cigarettes manufactured by Ridgeway would be sold; (5) making hiring decisions for Ridgeway; (6) directing money intended for Ridgeway to Heflin, White, Edwards and Brands; (7) excessively fragmenting Ridgeway; (8) directing the movement of funds to prevent the payment of statutory escrow obligations; (9) disposing of almost all assets of Ridgeway; (10) directing Welchons to send information regarding the value of the equipment, spare parts, and inventory owned by Ridgeway to an employee of Swift Transportation ("Swift"), by whom Heflin had previously been employed; (11) hiring attorneys, Michelle Turpin and Victor Schwartz, in 2004 to assist Ridgeway with its finances; (12) making payments to the attorneys in excess of $1 million, "[without] financial records of how that money was spent"; (13) directing, with Schwartz's aid, the destruction of Ridgeway's paper records, computer hard drives, and tape back-ups; (14) keeping "no corporate financial records or grossly inadequate corporate records"; and (15) informing Welchons that Ridgeway would not file bankruptcy because Heflin "did not want anybody looking back to see what was going on and track the money back to where it came from."

Rather than become a participating manufacturer under the MSA, Ridgeway elected to comply with N.C. Gen. Stat. § 66-291. In April 2003, Ridgeway made its first escrow deposit of $1,220,313.60, as required by N.C. Gen. Stat. § 66-291(b), for sales of cigarettes in North Carolina during 2002. However, in 2003, Ridgeway sold at least 70.6 million cigarettes in North Carolina, which required a deposit of approximately $1.3 million into the escrow account before 15 April 2004. Ridgeway failed to make this deposit. In 2004, Ridgeway sold at least 17 million cigarettes in North Carolina, and despite being notified multiple times by the State of their escrow obligation, Ridgeway again failed to make the required deposit before 15 April 2005. In fall 2004, Ridgeway stopped manufacturing cigarettes, and no escrow was ever deposited by Ridgeway for cigarettes sold during 2003 and 2004.

On 4 May 2004, plaintiff instituted this action seeking to recover from Ridgeway the escrow deposit due in 2004, civil penalties, and also seeking an injunction prohibiting Ridgeway from selling cigarettes in North Carolina for two years. On 19 October 2005, plaintiff filed an amended complaint. This complaint added claims for the escrow deposit due in 2005, together with civil penalties arising from the failure to make the deposit. It further sought to impose liability upon defendants Brands, Edwards, White and Heflin under a piercing the corporate veil theory. Claims were also made against defendants under the North Carolina Unfair and Deceptive Trade Practices Act and for civil conspiracy.

On 25 October 2005, Ridgeway and Heflin moved to dismiss plaintiff's amended complaint. On 9 December 2005, Judge Smith granted the motion to dismiss in part, dismissing the claims for piercing the corporate veil, unfair and deceptive trade practices, and conspiracy as to both Ridgeway and Heflin. The order further dismissed the claims for civil penalties as to Heflin. From this order, plaintiff appeals only as to the dismissal of its claims against Heflin.

## Interlocutory Appeal

[1] We must first determine whether plaintiff's appeal is interlocutory and whether it is properly before this Court. This appeal concerns only Heflin, not the other defendants. The trial court did not certify the judgment pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b) (2005). Therefore, we must first determine whether this appeal affects a substantial right. We conclude it does.

"The right to avoid two trials on the same or overlapping issues . . . constitute[s] a substantial right[.]" *Draughon v. Harnett Cty. Bd. of Educ.*, 158 N.C. App. 705, 707, 582 S.E.2d 343, 345 (2003); *see also Green v. Duke Power Co.*, 305 N.C. 603, 290 S.E.2d 593 (1982); *Liggett Group v. Sunas*, 113 N.C. App. 19, 437 S.E.2d 674 (1993). Similarly, the dismissal of plaintiff's claim against Heflin "affects a substantial right to have determined in a single proceeding the issues of whether [plaintiff] has been damaged by the actions of one, some or all defendants, especially since [plaintiff's] claims against all of them arise upon the same series of transactions." *Fox v. Wilson*, 85 N.C. App. 292, 298, 354 S.E.2d 737, 741 (1987).

In the instant case, since the liability of Edwards, White, and Brands depends on Heflin's joint and several liability, plaintiff faces the possibility of having to undergo two trials on the same issue. We therefore address the merits of this appeal.

## Standard of Review

A motion to dismiss under N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (2005), tests the legal sufficiency of the complaint. *Grant Constr. Co. v. McRae*, 146 N.C. App. 370, 373, 553 S.E.2d 89, 91 (2001) (citation omitted). On appeal, our standard of review "is whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory[.]" *Bowman v. Alan Vester Ford Lincoln Mercury*, 151 N.C. App. 603, 606, 566 S.E.2d 818, 821 (2002) (quotation omitted). The complaint should be "liberally construed, and the court should not dismiss the complaint unless it appears beyond doubt that [the] plaintiff could prove no set of facts in support of his claim which would entitle him to relief." *Id.*

## I: Liability pursuant to Piercing the Corporate Veil

In its first argument, plaintiff contends that the trial court erred by granting Heflin's N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) motion to dismiss plaintiff's claim for piercing the corporate veil. We agree. However, we must first address the argument in Heflin's brief that N.C. Gen. Stat. § 1-54(2) bars plaintiff from collecting penalties in connection with past due escrow payments from Heflin under a theory of piercing the corporate veil, because plaintiff's amended complaint does not relate back to the original complaint. We agree in part.

## A: Statute of Limitations

**[2]** On 4 May 2004, plaintiff filed suit against Ridgeway for Ridgeway's failure to make escrow payments due on 15 April 2004. Plaintiff filed suit within one year of Ridgeway's failure to make the 15 April 2004 escrow payment, which was within the applicable statute of limitations. *See* N.C. Gen. Stat. § 1-54(2) and 66-291(c) (2005). On 19 October 2005, plaintiff amended its complaint to include Ridgeway's failure to make escrow payments due on 15 April 2005 and to bring an action against Heflin, alleging a theory of piercing the corporate veil. Heflin contends that the statute of limitations had expired as to him, since the complaint was amended to add him as a party defendant more than one year after Ridgeway's failure to make the escrow payment due on 15 April 2004, and that the amended complaint does not relate back to the original complaint.

"[I]t is well-established law that if a plaintiff does not name the party responsible for his alleged injury before the statute of limitations runs, his claim will be dismissed." *Estate of Fennell v. Stephenson*, 354 N.C. 327, 332, 554 S.E.2d 629, 632 (2001). However, in certain circumstances, a complaint may relate back "with respect to a party defendant added after the applicable limitations period[.]" *Franklin v. Winn Dixie Raleigh, Inc.*, 117 N.C. App. 28, 39, 450 S.E.2d 24, 31 (1994). The law regarding "[w]hether a complaint will relate back" to an added party hinges upon "whether that new defendant had notice of the claim so as not to be prejudiced by the untimely amendment." *Id.*

N.C. Gen. Stat. § 1A-1, Rule 15(c), allows the relation back of claims in amended complaints in certain circumstances:

A claim asserted in an amended pleading is deemed to have been interposed at the time the claim in the original pleading was interposed, unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading.

*Id.* In *Callicutt v. Motor Co.*, 37 N.C. App. 210, 212, 245 S.E.2d 558, 560 (1978), this Court explained Rule 15(c):

If the effect of the proposed amendment is merely to correct the name of a party already in court, clearly there is no prejudice in allowing the amendment, even though it relates back to the date of the original complaint. . . . On the other hand, if the effect of the amendment is to substitute for the defendant a new party, or

> add another party, such amendment amounts to a new and independent clause (sic) of action and cannot be permitted when the statute of limitations has run.

*Id.* (citing *Kerner v. Rackmill*, 111 F. Supp. 150, 151 (M.D.P.A. 1953)). In the second scenario, in which the amended complaint actually "add[s] another party," our Supreme Court has been reluctant to conclude that a party added in an amended complaint can ever have adequate notice. *Id.; see also Estate of Fennell*, 354 N.C. at 332, 554 S.E.2d at 632; *Crossman v. Moore*, 341 N.C. 185, 459 S.E.2d 715 (1995). The Court explained that "while Rule 15 of the North Carolina Rules of Civil Procedure permits the relation-back doctrine to extend periods for pursuing claims, it does not apply to parties." *Estate of Fennell*, 354 N.C. at 334-5, 554 S.E.2d at 633-4 (citing *Crossman*, 341 N.C. at 187, 459 S.E.2d at 717). The Court set forth the rationale for this rule:

> When [an] amendment seeks to add a party-defendant or substitute a party-defendant to the suit, the required notice cannot occur. As a matter of course, the original claim cannot give notice of the transactions or occurrences to be proved in the amended pleading to a defendant who is not aware of his status as such when the original claim is filed. We hold that this rule does not apply to the naming of a new party-defendant to the action. It is not authority for the relation back of a claim against a new party.

*Crossman*, 341 N.C. at 187, 459 S.E.2d at 717. This is true even when "a proposed amendment join[s] a partner as an individual defendant in an action against his partnership . . . even though the partner was fully aware of the action and participated in its defense." 1 G. Gray Wilson, *North Carolina Civil Procedure* § 15-12, at 315 (1995) (citing *Crossman*, 341 N.C. 185, 459 S.E.2d 715).

In light of *Crossman*, we hold that the statute of limitations expired as to any claims against Heflin for penalties under N.C. Gen. Stat. § 66-291(c) arising from the failure to make the 2004 escrow deposit. We thus affirm the trial court's dismissal of the claim for penalties arising out of the failure to pay the 2004 escrow deposit. However, the dismissal of this claim has no effect upon plaintiff's claims for payment of the 2004 escrow deposit. *See Miller v. C. W. Myers Trading Post, Inc.*, 85 N.C. App. 362, 368, 355 S.E.2d 189, 193 (1987) (holding that N.C. Gen. Stat. § 1-54(2) was inapplicable to an action not constituting a "penalty or forfeiture" and the purpose of which was not "punitive"); *see also* N.C. Gen. Stat. § 1-52(2) (2005).

Further, at the time of the filing of the amended complaint, which named Heflin as a party to this action, the one-year statute of limitations had not expired as to any penalties arising from the failure to make the 2005 escrow deposit.

### B: Piercing the Corporate Veil

**[3]** North Carolina courts will "pierce the corporate veil" where an "individual exercises actual control over a corporation, operating it as a mere instrumentality[.]" *Becker v. Graber Builders, Inc.*, 149 N.C. App. 787, 790, 561 S.E.2d 905, 908 (2002) (citation omitted). The North Carolina Supreme Court set forth the "instrumentality rule" as follows:

> [When a] corporation is so operated that it is a mere instrumentality or alter ego of the sole or dominant shareholder and a shield for his activities in violation of the declared public policy or statute of the State, the corporate entity will be disregarded and the corporation and the shareholder treated as one and the same person, it being immaterial whether the sole or dominant shareholder is an individual or another corporation.

*Henderson v. Finance Co.*, 273 N.C. 253, 260, 160 S.E.2d 39, 44 (1968). Liability may be imposed on an individual controlling a corporation as an "instrumentality" when the individual had:

(1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and

(2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights; and

(3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Glenn v. Wagner*, 313 N.C. 450, 455, 329 S.E.2d 326, 330 (1985).

Factors to consider in determining whether to pierce the corporate veil include: (1) inadequate capitalization; (2) non-compliance with corporate formalities; (3) complete domination and control of the corporation so that it has no independent identity; and (4) excessive fragmentation of a single enterprise into separate corporations.

*Id.* at 455, 329 S.E.2d at 330-31 (citing generally, Robinson, *North Carolina Corporation Law* §§ 2-12, 9-7 to -10 (3d ed. 1983)).

The question for this Court is whether the allegations in plaintiff's complaint are sufficient to state a claim for piercing the corporate veil.

Plaintiff alleges that Heflin: (1) "overwhelmingly dominated and controlled [Ridgeway] to the extent [Ridgeway] had no separate identity[;]" (2) used that control to "set[] the pricing structure" so as to violate N.C. Gen. Stat. § 66-291(b); and (3) that Heflin's aforesaid control and statutory violation proximately caused unjust capital loss to the escrow fund established by N.C. Gen. Stat. § 66-291(b). Plaintiff specifically alleged that Heflin "deliberately ignored" the advice of Ridgeway's general manager, who warned that "the pricing structure was grossly inadequate to satisfy the statutory obligations of the [North Carolina] escrow payment [statute]." Plaintiff alleged that Heflin, Edwards and White were responsible for setting the pricing structure for the sale of cigarettes, "which was well below the minimum necessary level to pay the statutory obligations[.]" Further, they set this pricing structure "to have an unfair advantage over similarly situated competitors . . . with no intention of paying their statutory obligations[.]" Moreover, plaintiff contended that Heflin, Edwards and White "took money out of [Ridgeway] and left [Ridgeway] in disarray[;]" that Ridgeway was "inadequately capitalized" and "excessively fragment[ed][;]" that "no corporate financial records or grossly inadequate corporate records existed for [Ridgeway][;]" and that Ridgeway "failed to follow corporate formalities[.]" Accordingly, we hold that the allegations in plaintiff's complaint are sufficient to state a claim for piercing the corporate veil. *See, e.g., Becker,* 149 N.C. App. at 790, 561 S.E.2d at 908.

We reverse the trial court as to this assignment of error.

## II:  Unfair and Deceptive Trade Practices

[4] In its second argument, plaintiff contends that the trial court erred by dismissing its claim for relief under N.C. Gen. Stat. § 75-1.1 (2005), the Unfair and Deceptive Trade Practices Act. We disagree and affirm the trial court.

N.C. Gen. Stat. § 75-1.1 states, in pertinent part, the following:

    (a)  Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful.

(b) For purposes of this section, "commerce" includes all business activities, however denominated, but does not include professional services rendered by a member of a learned profession.

*Id.*

To establish a *prima facie* claim for unfair and deceptive trade practices, the plaintiff must show: (1) Heflin committed an unfair or deceptive act or practice; (2) the action in question was in or affecting commerce; and (3) the act proximately caused injury to the plaintiff. *Pleasant Valley Promenade v. Lechmere, Inc.*, 120 N.C. App. 650, 664, 464 S.E.2d 47, 58 (1995).

Heflin contends that its failure to perform its obligation under N.C. Gen. Stat. § 66-291 does not provide a cause of action under N.C. Gen. Stat. § 75-1.1, basing his argument upon the rationale of *Lindner v. Durham Hosiery Mills, Inc.*, 761 F.2d 162, 166 (4th Cir. 1985), in which the Fourth Circuit held that N.C. Gen. Stat. § 75-1.1 did not apply to securities transactions. The court reasoned that "the North Carolina legislature would [not] have intended § 75-1.1, with its treble damages provision, to apply to securities transactions which were already subject to pervasive and intricate regulation under the North Carolina Securities Act" and other federal acts. *Id.* at 167. The court stated that "[t]he presence of other federal or state statutory schemes may limit the scope of § 75-1.1." *Id.*

In *Skinner v. E. F. Hutton & Co.*, 314 N.C. 267, 268, 333 S.E.2d 236, 237 (1985), our Supreme Court cited *Lindner* as persuasive authority, holding that "securities transactions are beyond the scope of [N.C. Gen. Stat. § 75-1.1.]" *Id.* The Court in *Hajmm Co. v. House of Raeford Farms*, 328 N.C. 578, 403 S.E.2d 483 (1991), expanded the exception established by *Skinner*, holding that § 75-1.1 did not apply to a corporation's refusal to redeem revolving fund certificates issued by the corporation. The Court reasoned that the extension of the scope of § 75-1.1 in this context would "create overlapping supervision, enforcement, and liability in [an] area [that] is already pervasively regulated by state and federal statutes and agencies." *Id.* at 593, 403 S.E.2d at 493. The Court explained that "there is enough legislative apparatus already in place . . . without also applying [§ 75-1.1]." *Id.*

In the instant case, N.C. Gen. Stat. § 66-291 (2005) provides that: "Any tobacco product manufacturer selling cigarettes to consumers within the State . . . shall" either elect to "[b]ecome a participating

manufacturer . . . under the Master Settlement Agreement" or "[p]lace into a qualified escrow fund by April 15 of the year following the year in question the following amounts[:] . . . For each of 2003 through 2006: $.0167539 per unit sold." *Id.* N.C. Gen. Stat. § 66-291(c) provides the remedy for failure to comply with the aforementioned statute: "[t]he Attorney General may bring a civil action on behalf of the State against any tobacco product manufacturer that fails to place into escrow the funds required under this section." *Id.* N.C. Gen. Stat. § 66-291(c) further provides that the noncompliant manufacturer has fifteen days to "place such funds into escrow as shall bring it into compliance." *Id.* If the violation was a "knowing violation," the court may impose the following civil penalty:

> [A]n amount not to exceed fifteen percent (15%) of the amount improperly withheld from escrow per day of the violation and in a total amount not to exceed three hundred percent (300%) of the original amount improperly withheld from escrow[.]

*Id.* We hold that N.C. Gen. Stat. § 66-291 is analogous to the regulations discussed in *Lindner,* 761 F.2d 162, *Skinner,* 314 N.C. 267, 333 S.E.2d 236, and *Hajmm Co.,* 328 N.C. 578, 403 S.E.2d 483. N.C. Gen. Stat. § 66-291 itself provides an extensive remedy for failure to comply with the escrow obligation. Because the presence of other statutory schemes may limit the scope of N.C. Gen. Stat. § 75-1.1, we conclude that extension of the scope of N.C. Gen. Stat. § 75-1.1 in this context would create unnecessary and "overlapping supervision, enforcement, and liability[.]" *Hajmm Co.,* 328 N.C. at 593, 403 S.E.2d at 493. We conclude that it was not the legislature's intent to extend the scope of Chapter 75 to include noncompliance with N.C. Gen. Stat. § 66-291. "[T]here is enough legislative apparatus already in place . . . without also applying the Act." *Id.* We affirm the trial court's dismissal of this claim.

### III:  Civil Conspiracy

[5] In its third argument, plaintiff contends that the trial court erred by granting Heflin's N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) motion to dismiss the claim for civil conspiracy in plaintiff's amended complaint. We agree.

The elements of a civil conspiracy are: "(1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a

STATE EX REL. COOPER v. RIDGEWAY BRANDS MFG., LLC

[184 N.C. App. 613 (2007)]

common scheme." *Privette v. University of North Carolina*, 96 N.C. App. 124, 139, 385 S.E.2d 185, 193 (1989).

The doctrine of intracorporate immunity holds that, since at least two persons must be present to form a conspiracy, a corporation cannot conspire with itself, just as an individual cannot conspire with himself. *Buschi v. Kirven*, 775 F.2d 1240, 1251-52 (4th Cir. 1985). An allegation that a corporation is conspiring with its agents, officers or employees is tantamount to accusing a corporation of conspiring with itself. *Id.* Moreover, the grant of immunity is not destroyed by suing the agent in his individual capacity. *Id.* at 1252. However, an exception to the doctrine exists if the corporate agent has an "independent personal stake in achieving the corporation's illegal objective." *Id.* (citing *Greenville Publishing Co., Inc., v. Daily Reflector, Inc.*, 496 F.2d 391, 399 (4th Cir. 1974)).

In the instant case, the complaint alleged:

Defendants shared an understanding, either expressed or implied, to enter into an agreement to underprice the cigarettes made by Defendant [Ridgeway] and distributed and sold by [Brands] so that [Ridgeway] would be unable to deposit sufficient escrow to cover sales in violation of N.C. Gen. Stat. § 66-291 and would deprive the State of North Carolina of a fund against which it could execute judgments against Defendant [Ridgeway].

Defendants shared an understanding, either express or implied, to enter into an agreement to unfairly and deceptively underprice the cigarettes made by Defendant [Ridgeway] and distributed and sold by [Brands] so that [Ridgeway] would be unable to deposit sufficient escrow to cover sales in violation of N.C. Gen. Stat. § 66-291 and deprived the State of a fund against which it could execute judgments.

We again note that the complaint should be "liberally construed, and the court should not dismiss the complaint unless it appears beyond doubt that [the] plaintiff could prove no set of facts in support of his claim which would entitle him to relief." *Bowman* 151 N.C. App. at 606, 566 S.E.2d at 821.

Plaintiff's complaint alleges that an agreement existed between Heflin, Edwards and White, to violate, pursuant to a common scheme, the corporation's escrow obligation under N.C. Gen. Stat. § 66-291, which caused injury to plaintiff by "depriv[ing] [plaintiff] of a fund

against which it could execute judgments." *See generally Privette*, 96 N.C. App. 124, 385 S.E.2d 185.

Furthermore, we conclude that the benefit accruing to Heflin from his conspiracy was not merely the benefit associated with the profitability of the corporations, Ridgeway and Brands. Plaintiff's complaint supports the theory that Heflin had an "independent personal stake in achieving the corporation's illegal objective," because plaintiff alleged that Heflin "directe[d] monies intended to [Ridgeway] to either . . . Edwards, White, [Brands] or [Heflin][.]" Plaintiff further alleged that, in 2004, Heflin told Welchons that "[Ridgeway] was not going to file for bankruptcy because [Heflin] and others did not want anybody looking back to see what was going on and track the money back to where it came from." After this comment, Welchons considered "the creation of financial records" and the hiring of "attorneys Schwartz and Turpin" to be "a cover-up to hide activities." Ridgeway made payments in excess of $1 million to Turpin and Schwartz, "of which none was ever accounted for or returned to [Ridgeway][.]" Welchons, the general manager of Ridgeway, was never told how the money was spent. Plaintiff alleged that Heflin and others "disposed of almost all assets of [Ridgeway]" and "siphon[ed] off funds to" themselves. We hold that the foregoing is sufficient to support the theory that Heflin had an "independent personal stake in achieving the corporation's illegal objective." *Buschi*, 775 F.2d at 1252.

We reverse the trial court's order granting Heflin's N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) motion to dismiss as to the claim for civil conspiracy.

For the reasons discussed above, we affirm in part, reverse in part, and remand this case to the trial court for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART.

Judge HUNTER concurs.

Judge WYNN concurring in part and dissenting in part.

WYNN, Judge, concurring in part and dissenting in part.

I concur with the majority in concluding that this appeal presents the possibility of two trials on the same issue, as well as the major-

STATE ex rel. COOPER v. RIDGEWAY BRANDS MFG., LLC

[184 N.C. App. 613 (2007)]

ity's holding to reverse the trial court's granting of Mr. Heflin's Rule 12(b)(6) motion on the State's claim for piercing the corporate veil and to affirm the trial court's dismissal of the State's UDTP claim. However, I would reverse the trial court's dismissal of the State's claim for civil penalties, and I would affirm the trial court's dismissal of the State's claim of civil conspiracy. From those portions of the majority opinion, I therefore respectfully dissent.

## I.

First, I disagree with the conclusions of the majority's analysis as to the issue of the State's claim for civil penalties against Mr. Heflin, relating to the non-payment of the 2004 escrow fees.

As cited by the majority, our Supreme Court has established the rule that a "new party-defendant" may not be named in the amendment of a complaint, as the North Carolina Rules of Civil Procedure are "not authority for the relation back of a claim against a new party." *See, e.g., Crossman v. Moore,* 341 N.C. 185, 187, 459 S.E.2d 715, 717 (1995). The instant case, however, also involves a claim by the State to pierce the corporate veil of Ridgeway, a claim which we allow to go forward by reversing the trial court's granting of Mr. Heflin's Rule 12(b)(6) motion.

If the State subsequently succeeds on its claim to pierce the corporate veil, Mr. Heflin would not be a *new* party-defendant, as a jury would therefore have concluded that he is the alter ego of Ridgeway. As such, the lack of his name in the original complaint would essentially be immaterial with respect to the question of notice, the Supreme Court's primary concern in disallowing the relation-back doctrine as to newly named parties. *See id.* ("As a matter of course, the original claim cannot give notice of the transactions or occurrences to be proved in the amended pleading to a defendant who is not aware of his status as such when the original claim is filed.").

I find the reasoning in *Strawbridge v. Sugar Mountain Resort, Inc.,* 243 F. Supp. 2d 472 (W.D.N.C. 2003), to be persuasive and applicable to the case at hand. In *Strawbridge,* the Western District Court held that the filing of an action against a corporation stopped the limitation period from running with respect to alter egos of the corporation. *Id.* at 476-77. I believe this approach to be more consistent with the idea of what an "alter ego" means, in that "the corporate entity will be disregarded and the corporation and the shareholder treated as *one and the same person*[.]" *Henderson v. Security Mortgage &*

STATE ex rel. COOPER v. RIDGEWAY BRANDS MFG., LLC

[184 N.C. App. 613 (2007)]

*Finance Co., Inc.*, 273 N.C. 253, 260, 160 S.E.2d 39, 44 (1968) (emphasis added).

Thus, I would conclude that the State's claim for civil penalties, and whether it was filed after the expiration of the applicable statute of limitations, hinges on whether the State can successfully pierce the corporate veil and establish that Mr. Heflin and Ridgeway are alter egos. Given that this case is before us on review of a Rule 12(b)(6) motion, and we have held that the State can proceed with its claim to pierce the corporate veil, I would likewise reverse the trial court's order dismissing the State's claim for civil penalties.

## II.

Next, although I agree with the majority that intracorporate immunity should not apply in this case, I do not believe that the State's complaint alleged sufficient facts to show a civil conspiracy in this case. I would therefore affirm that portion of the trial court's order that dismissed the State's claim for civil conspiracy.

To state a claim for civil conspiracy, there must be proof of an agreement between two or more persons to do an unlawful act or a lawful act in an unlawful manner. *Dove v. Harvey*, 168 N.C. App. 687, 690, 608 S.E.2d 798, 800-01 (2005), *disc. review denied*, 360 N.C. 289, 628 S.E.2d 249 (2006). Here, the State's complaint referred only to Defendants "shar[ing] an understanding, either expressed or implied, to enter into an agreement[.]" Although the State argues that this allegation should be sufficient in light of North Carolina's adoption of notice pleading, this Court has also noted that "the evidence of the agreement must be sufficient to create more than a suspicion or conjecture in order to justify submission to a jury." *Id.* at 690-91, 608 S.E.2d at 801 (citation and quotation omitted). I do not believe the State's complaint meets this burden.

The State's complaint includes no factual allegations to support the notion of an agreement or conspiracy among Mr. Heflin, Mr. Edwards, and Mr. White to underprice the cigarettes for the express purpose of avoiding its statutory obligations to pay into the qualified escrow account. Even were all the facts of the complaint taken as true, its allegations are insufficient to "create more than a suspicion or conjecture" of an actual agreement among the parties; accordingly, they fail to state a claim for civil conspiracy. I would therefore affirm the trial court's dismissal of the State's claim for civil conspiracy.