BERNETTE COTTON, JUDY LYNN JONES, AND ELIZA HARVEY, ET AL. v. NORMAN K. STANLEY AND EVELYN B. STANLEY

No. 8610SC997

(Filed 4 August 1987)

1. **Landlord and Tenant § 19.1— rental property—violation of Housing Code—no entitlement to complete refund of rent**

    A Raleigh Housing Code provision prohibiting an owner from renting as a dwelling "any vacant structure" after the housing inspector has issued an order to repair did not make it unlawful to continue to collect rent from present occupants of an offending structure and did not automatically reduce the fair rental value of such units to zero between the date defendant landlords had notice of violations of the Housing Code and the date repairs were made so as to entitle plaintiff tenants to a complete refund of all rent paid during that time.

2. **Landlord and Tenant § 19.1— rent abatement for failure to make repairs— evidence of fair rental value**

    In an action by plaintiff tenants for rent abatement based on the landlords' failure to repair the rental units in accordance with a city housing code, plaintiffs were not required to present direct evidence of the "as is" fair rental value of the rental units; rather, the jurors, from their own experience with living conditions, could determine the "as is" fair rental value of the units by considering the testimony of plaintiffs and the city housing inspector.

3. **Landlord and Tenant § 19.1— rental property—rent abatement for failure to make repairs—amount of recovery**

    In an action by plaintiff tenants for a rent abatement based on defendant landlords' alleged violation of the Residential Rental Agreements Act by failing to make repairs by the repair deadline, defendants will be liable for the difference between the fair rental value of the units "as is" and the fair rental

value of the units "as warranted" for the period between the expiration of a reasonable opportunity to repair after notice to the defendants by the housing inspector and the date repairs were made, and any special and consequential damages alleged and proven.

APPEAL by plaintiffs from judgment entered by *Stephens, Judge.* Judgment entered 24 April 1986 in Superior Court, WAKE County. Heard in the Court of Appeals 10 March 1987.

*East Central Community Legal Services, by Augustus S. Anderson, Jr., and Robert A. Miller for plaintiff-appellants.*

*No brief for defendant-appellees.*

GREENE, Judge.

This is a class action filed on behalf of two groups of tenants against their landlords, Norman K. and Evelyn B. Stanley. The class represented by Bernette Cotton consists of all past and present tenants. It requested the remedies of damages and injunctive relief and is the only appellant here. Plaintiffs claimed defendants violated the Residential Rental Agreements Act, N.C.G.S. Sec. 42-38 *et seq.*, and that the violations of the Act were unfair business practices as defined by N.C.G.S. Sec. 75-1.1.

At trial, plaintiffs presented evidence that tended to support their allegations that defendants: 1) charged their tenants excessive late penalties, 2) brought summary ejectment proceedings for the sole purpose of collecting back rent and late penalties rather than evicting tenants, 3) maintained an intentionally misleading method of accounting in order to collect rent in excess of rent actually owed and 4) broke their lease contracts with plaintiffs by raising rents without plaintiffs' consent before the leases expired. Plaintiffs also presented a great deal of evidence through Beal Bartholomew, Housing Inspection Administrator for the City of Raleigh, in support of their allegation that defendants violated part of the Residential Rental Agreements Act, N.C.G.S. Sec. 42-42(a)(1), in that they failed to repair their rental property in accordance with the Raleigh Housing Code. Raleigh City Code of Ordinances, Article H. Housing Code, Sec. 10-6121 *et seq.* (1984). N.C.G.S. Sec. 42-42(a)(1) (1984) requires landlords to "[c]omply with the current applicable building and housing codes . . . to the extent required by the operation of such codes . . . ."

Mr. Bartholomew testified to the Housing Agency's procedure in responding to reports of Housing Code violations. He testified that an inspection is made of the property and if a violation is found, the agency sends a letter to the owner notifying him of the inspection and advising him to appear for a hearing on the violations. The Housing Code requires this hearing be held no sooner than ten days but no later than thirty days after the inspection. At the hearing, the owner may contest the existence of the violations or show the violations have been corrected. If the hearing board determines the reported violations exist, it sends the owner an order to repair which informs him of the deadline by which the violations must be corrected.

Mr. Bartholomew also described the appeal procedure, what his office does when repairs are not made by the repair deadline and other matters not pertinent to this appeal. He testified that 48 of defendants' nearly 200 rental properties had at one time or another been found to violate Raleigh's Housing Code.

Plaintiffs' evidence also tended to show defendants often failed to repair their rental property by the deadline to repair and that at least ten members of the class represented by Cotton had paid rent to defendants while their units were still in violation of the Housing Code even after the repair deadline.

At the close of plaintiffs' case, defendants moved for directed verdict on all issues. The court granted their motion on the issue of whether plaintiffs were entitled to damages. Defendants offered no evidence. After instruction and deliberation, the jury answered that defendants had engaged in a pattern of: 1) charging unfair, unreasonable and excessive late payment penalties; 2) bringing unfair and unnecessary summary ejectment proceedings against tenants; 3) continuing to collect the full amount of rent for rental units which were in violation of the City Housing Code; and 4) continuing to collect the full amount of rent in rental units which had material defects in heating and plumbing facilities or such other material defects that rendered the units unsafe or unfit. The court then determined, pursuant to *Love v. Pressley*, 34 N.C. App. 503, 516, 239 S.E. 2d 574, 583 (1977), *disc. rev. denied*, 294 N.C. 441, 241 S.E. 2d 843 (1978), that the practices found by the jury violated N.C.G.S. Sec. 75-1.1, which prohibits unfair or deceptive acts or practices in or affecting commerce. The court

permanently enjoined defendants from further engaging in the acts the jury found to be unfair.

The class of plaintiffs represented by Cotton appeals from the directed verdict for defendants on the issue of damages. Defendants did not file a brief. The issues raised are: 1) whether the court could have determined plaintiffs' damages as a matter of law and 2) whether there was sufficient evidence for the jury to determine plaintiffs' damages as a question of fact.

Tenants may bring an action for breach of the implied warranty of habitability, seeking rent abatement, based on their landlord's noncompliance with N.C.G.S. Sec. 42-42(a). *Miller v. C.W. Myers Trading Post, Inc.*, 85 N.C. App. 362, 368, 355 S.E. 2d 189, 193 (1987). The rent abatement is calculated as the difference between the fair rental value of the premises if as warranted (*i.e.*, in full compliance with N.C.G.S. 42-42(a) ) and the fair rental value of the premises in their unfit condition ("as is") plus any special and consequential damages alleged and proved. *Id.* at ---, 355 S.E. 2d at 194 (allowing special and consequential damages); *Brewington v. Loughran*, 183 N.C. 559, 565, 112 S.E. 257, 260 (1922) (special damages allowed as part of tenants' remedy against landlord for breach of lease contract).

I

[1]  Plaintiffs argue they are entitled to a complete refund of all rent paid between the date defendants had notice of the violations of the Housing Code and the date repairs were made. They first contend the court should have determined, as a matter of law, that for a portion of that time the fair rental value of the units was zero. Their argument is based on Section 10-6125(c) of the Raleigh City Housing Code which prohibits an owner from renting as a dwelling "any vacant structure" after the housing inspector has issued an order to repair. Plaintiffs contend since defendants could not rent their units if they were vacant, the fair rental value of each unit was zero. The point of plaintiffs' argument is that their units had no market value until the violations were corrected. We disagree.

While Section 10-6125(c) makes it "unlawful to rent or offer for rent as a dwelling any vacant structure . . . upon which an order to repair . . . has been issued . . .," we find the Housing

Code does not make it unlawful to continue to collect rent from present occupants of an offending structure. We hold that the illegality of re-renting the unit on the open market does not automatically reduce the unit's fair rental value to zero. The measure of the unit's fair rental value is not the price at which the owner could *lawfully* rent the unit to a new tenant in the open market, but the price at which he could rent it if it were lawful for him to do so. Thus, the trial court did not err by refusing to find the fair rental value of the plaintiffs' units was zero during the period of time between the repair deadline and the date of repair.

## II

Plaintiffs next argue the issue of damages should have been submitted to the jury.

Plaintiffs presented abundant evidence of the existence of both Raleigh Housing Code violations, a violation of N.C.G.S. Sec. 42-42(a)(1), and other violations of N.C.G.S. Sec. 42-42(a) in regards to defendants' rental property. The violations include: 1) non-weather tight doors and windows; 2) inadequate heating and hot water; 3) unsanitary conditions providing a breeding ground for rats and other pests; 4) leaking and broken pipes; 5) improper electrical wiring and overloaded circuits; 6) improper drainage and sewage connections resulting in sewage lying on top of the ground; 7) broken steps, window panes and anti-pest screens leading to crawl spaces; 8) missing or ripped screening on windows and doors and 9) deteriorating floor joists, exterior walls, interior walls, ceilings and roofs. Almost every piece of property plaintiffs described had three or more violations. Plaintiffs also presented evidence of the rent they paid defendants during the periods of time the violations existed.

[2] At trial, defendants argued plaintiffs' evidence was insufficient for the jury because plaintiffs did not present any *direct* evidence of the units' "as is" fair rental value. Direct evidence of fair rental value is an opinion of what the premises would rent for on the open market from either an expert or a witness qualified by familiarity with the specific piece of property. *See Huff v. Thornton*, 287 N.C. 1, 6, 213 S.E. 2d 198, 202 (1975) (discussing direct evidence of fair market value). Defendants' argument is meritless.

The fair rental value of property may be determined "by proof of what the premises would rent for in the open market, *or* by evidence of other facts from which the fair rental value of the premises may be determined." *Brewington v. Loughran*, 183 N.C. 559, 565, 112 S.E. 257, 260 (1922) (emphasis added); *Sloan v. Hart*, 150 N.C. 269, 275, 63 S.E. 1037, 1039 (1909). The "other facts" of which *Brewington* and *Sloan* speak include the dilapidated condition of the premises—indirect evidence of fair rental value. *Huff v. Thornton*, 287 N.C. 1, 213 S.E. 2d 198 (1975); *Simon v. Mock*, 75 N.C. App. 564, 331 S.E. 2d 300 (1985). The rent agreed upon by the parties when entering into the lease is some evidence of the property's "as warranted" fair rental value, but it is not binding. *See Martin v. Clegg*, 163 N.C. 528, 530, 79 S.E. 1105, 1106 (1913).

Here, plaintiffs' evidence was sufficient to show both fair rental value "as warranted" and fair rental value "as is." From their own experience with living conditions, the jury could determine the "as is" fair rental value of plaintiffs' units by considering the testimony of both plaintiffs and Mr. Bartholomew. A party is not required to put on direct evidence to show fair rental value. *Accord, Martin v. Clegg*, 163 N.C. 528, 79 S.E. 1105.

**[3]** We hold the trial court erred by entering directed verdict for defendants on the issue of damages. We remand for a trial on that issue. Defendants will be liable for the difference between the fair rental value of the units "as is" and the units' fair rental value "as warranted," for the period between the expiration of a reasonable opportunity to repair after notice to the defendants and the date repairs were made, plus any special and consequential damages alleged and proven. *See* Fillette, North Carolina's Residential Rental Agreements Act: New Developments for Contract and Tort Liability in Landlord-Tenant Relations, 56 N.C.L. Rev. 785, 795 (1978) (indicating the landlord should have a reasonable time after notice to repair the defects which violate the Residential Rental Agreements Act); *Brewington*, 183 N.C. at 561, 112 S.E. at 258 (a landlord must have a reasonable opportunity to comply with the lease before a tenant is justified in abandoning the leasehold).

As this is a class action, it may be the trial court will determine individual proof of damages to be impractical and some form of aggregate proof of damages to be more appropriate. This is a

matter not now before us, and it will be left to the trial court. *See* 2 H. Newberg, Newberg on Class Actions Sec. 10.01 *et seq.* (2d ed. 1985 Supp. 1987).

The trial court has already determined defendants' practices were unfair business practices and violated N.C.G.S. Sec. 75-1.1. In the event it is found plaintiffs were damaged, the trial court will be required to treble those damages under N.C.G.S. Sec. 75-16. *Marshall v. Miller*, 302 N.C. 539, 547, 276 S.E. 2d 397, 402 (1981).

New trial on the issue of damages.

Judges ARNOLD and PARKER concur.