IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA14-1136-2

 Filed: 4 August 2015

Mecklenburg County, No. 14-CVD-9222

STIKELEATHER REALTY & INVESTMENTS CO., Plaintiff-Appellant,

 v.

ELISHA BROADWAY, Defendant-Appellee.

 Appeal by plaintiff from judgment entered 18 July 2014 by Judge Matt Osman

in Mecklenburg County District Court. Heard in the Court of Appeals 18 March 2015.

 The Law Firm of Ross S. Sohm, PLLC, by Ross S. Sohm, for plaintiff-appellant.

 No brief filed on behalf of defendant-appellee.

 HUNTER, JR., Robert N., Judge.

 Stikeleather Realty & Investments Co. (“Plaintiff-Landlord”) appeals from a

bench trial judgment awarding trebled rent abatement and attorney’s fees to Elisha

Broadway (“Defendant-Tenant”) on claims of breach of the implied warranty of

habitability and unfair and deceptive trade practices. We reverse.

 I. Factual & Procedural History

 On 19 March 2014, Plaintiff-Landlord initiated a summary ejectment action

against Defendant-Tenant for breach of a residential lease agreement for failure to

pay rent for the month of March. On 31 March 2014, Defendant-Tenant filed an

answer and asserted the defense of retaliatory eviction pursuant to N.C. Gen. Stat. §

42-37.1, as well as counterclaims for (1) breach of the implied warranty of habitability

pursuant to N.C. Gen. Stat. § 42-42, (2) unfair and deceptive trade practices pursuant
 STIKELEATHER REALTY AND INVESTMENTS CO. V. BROADWAY

 Opinion of the Court

to N.C. Gen. Stat. § 75-1.1 et seq., (3) unfair debt collection practices pursuant to N.C.

Gen. Stat. § 75-50 et seq., (4) negligence, and (5) negligence per se.

 On 22 April 2014, Plaintiff-Landlord filed an amended complaint, alleging

Defendant-Tenant also breached the lease by keeping an unauthorized pet. On 2

May 2014, Defendant-Tenant filed an amended answer and counterclaim, which

contained no substantive changes pertinent to this appeal. On 8 May 2014, the

magistrate entered judgment in favor of Plaintiff-Landlord on the primary claim of

possession and in favor of Defendant-Tenant on his counterclaim of breach of the

implied warranty of habitability only, awarding him $1,000.00 in damages. Plaintiff

appealed to the district court.

 On 30 June 2014, the case was heard in Mecklenburg County District Court

before the Honorable Matt Osman. At that time, Defendant-Tenant had already

surrendered possession of the property. Therefore, the sole issue before the trial

judge was Defendant-Tenant’s counterclaim for breach of the implied warranty of

habitability. The transcript of this bench trial, as well as the record on appeal, reveals

the following pertinent facts.

 In May 2010, Defendant-Tenant entered into a residential lease to rent a home

located at 2600 Catalina Avenue in Charlotte (“the property”) for $500 per month. At

this time, the property was neither owned nor managed by Plaintiff-Landlord. The

lease contained a page signed by Defendant-Tenant stating that a “Carbon/Smoke

 -2-
 STIKELEATHER REALTY AND INVESTMENTS CO. V. BROADWAY

 Opinion of the Court

Detector”1 existed in the home and that it was in good working condition when

Defendant-Tenant took possession of the property. The lease also provided that

Defendant-Tenant shall make requests for repairs in writing. On 4 June 2013, Mr.

Kluth, a real estate broker, visited the property to obtain general information to list

the house. On 10 June 2013, Mr. Kluth returned to the property for another

inspection, this time bringing an interested buyer, Mr. Stikeleather, managing

partner of Plaintiff-Landlord, a limited liability corporation in the business of buying

and selling residential properties.

 During this second pre-sale inspection, Mr. Stikeleather asked Defendant-

Tenant if the property had a smoke alarm and carbon monoxide alarm. Defendant-

Tenant responded that it did not. Mr. Kluth then went to his truck and returned

with a smoke alarm and carbon monoxide alarm for Defendant-Tenant to put in the

property.

 On or around 26 June 2013, Plaintiff-Landlord purchased the property and

sent a letter to Defendant-Tenant notifying him that Plaintiff-Landlord was the new

owner and property manager. The letter also directed Defendant-Tenant to call

Plaintiff-Landlord to set up an inspection of the property and to put any requests for

repairs in writing.

 1 While the word “detector” appears throughout the record on appeal, this Court uses “alarm”
synonymously, in order to reflect amendments by the N.C. General Assembly to this same effect. See
2012 N.C. Sess. Laws 350, 350-52, ch. 92, § 1-4 (replacing the word “detector” with “alarm” throughout
provisions of the Residential Rental Agreements Act).

 -3-
 STIKELEATHER REALTY AND INVESTMENTS CO. V. BROADWAY

 Opinion of the Court

 On or around 24 September 2013, Mr. Stikeleather went by the house to do an

inspection, but it had to be “quick” because of the presence of an unauthorized pet on

the premises. During this inspection, Mr. Stikeleather testified that he observed an

alarm in the living room, plugged into an electrical outlet in the wall, but he admitted

he did not verify whether it was working properly.

 Near the middle of March 2014, Defendant-Tenant called Mr. Stikeleather and

told him he would be late with March’s rent; Mr. Stikeleather responded that he

would file eviction papers, which he did on 19 March 2014. Two days after the parties

appeared in small claims court near the end of March 2014, Plaintiff-Landlord sent

his repairman to install a smoke alarm and carbon monoxide alarm in the premises.

Defendant-Tenant felt it was unfair to be evicted for being only a few days late on

rent, so he went to City Code Enforcement, which issued an inspection report that

does not mention any issue with the property’s smoke alarm and carbon monoxide

alarm. Defendant-Tenant did not pay rent for the months of March, April, or May

2014.

 The day after the bench trial, on 1 July 2014, the trial judge entered a

judgment containing the following pertinent findings of fact, whose order has been

reorganized by this Court in an effort to improve clarity:

 3. [Defendant-Tenant] lived at 2600 Catalina, Charlotte,
 NC (“the property”), for four years and three months.

 ....

 -4-
 STIKELEATHER REALTY AND INVESTMENTS CO. V. BROADWAY

 Opinion of the Court

43. [Defendant-Tenant’s] son, Ronald Broadway (RB),
lived with his father at the property.

....

4. At the time [Defendant-Tenant] took possession of the
property in 2010 it was owned and managed by a different
landlord than the Plaintiff in this action.

....

65. [Mr.] Stikeleather is the managing partner of the LLC
that is [Plaintiff-Landlord].

....

76. [Plaintiff-Landlord’s] LLC owns approximately 200
properties and manages another 300 properties.

....

55. Mike Kluth is a real estate broker in Charlotte and he
sold the property to [Plaintiff-Landlord].

56. Prior to selling the house, Mr. Kluth visited the
property in June 2013 to obtain general information to list
the house.

....

58. During a second pre-sale inspection of the property in
June 2013, [Defendant-Tenant] told Mr. Kluth and [Mr.
Stikeleather] about the flooding in the basement. The
basement was dry when Mr. Kluth and [Mr. Stikeleather]
saw it.

59. During the second inspection [Mr. Stikeleather] asked
[Defendant-Tenant] about a Smoke/Carbon detector.

 -5-
 STIKELEATHER REALTY AND INVESTMENTS CO. V. BROADWAY

 Opinion of the Court

[Defendant-Tenant] said there was not one present in the
property.

60. Mr. Kluth then went to his car and got a Smoke/Carbon
detector to place in the house.

61. Mr. Kluth does not know whether the detector, which
was not new, was operational. The detector could be
plugged into the wall and could also be run on batteries.

62. [Defendant-Tenant] testified that the detector
provided by Mr. Kluth did not work.

....

38. In June 2013, [Plaintiff-Landlord] notified [Defendant-
Tenant] in writing that the property had been sold and that
[Plaintiff-Landlord] was the new owner and property
manager. Plaintiff[-Landlord] admitted Plaintiff’s Exhibit
2, a letter dated June 26, 2013, detailing the change in
ownership.

39. In addition to telling [Defendant-Tenant] about the
new management company, Plaintiff[-Landlord’s] Exhibit
2 also directed [Defendant-Tenant] to put any requests for
repair in writing and asked [Defendant-Tenant] to call
[Plaintiff-Landlord] to set up an inspection.

....

66. The only potential repair issue that [Plaintiff-
Landlord] was aware of at the time of the purchase was the
basement and the flooding.

....

2. The parties have also stipulated to the existence of a
lease between [Defendant-Tenant] and
Plaintiff[-]Landlord. . . .

 -6-
 STIKELEATHER REALTY AND INVESTMENTS CO. V. BROADWAY

 Opinion of the Court

....

21. The lease contains a page signed by [Defendant-
Tenant] stating that the property had a “Carbon/Smoke
Detector” in the unit and that it was in good working
condition when [Defendant-Tenant] took possession in
2010.

....

29. Paragraph 17 of the lease states that [Defendant-
Tenant] shall make a request for repair in writing.

....

70. After taking ownership of the property, [Mr.
Stikeleather] went by the house in the fall of 2013 to do a
quick inspection. It was a quick inspection due to the
presence of [Defendant-Tenant’s] dog.

71. [Mr. Stikeleather] testified that the dog was not
permitted at the property[.]

72. [Mr. Stikeleather] did observe a detector that was
plugged in during [the] fall 2013 inspection but did not
verify whether it was working properly.

....

32. [Defendant-Tenant] called [Mr. Stikeleather] to tell
him that he would be late with the March [2014] rent and
[Mr. Stikeleather] said that he would file eviction papers.

....

75. [Plaintiff-Landlord] sent his repairman to install a
detector after the first hearing in small claims court in late
March 2014.

....

 -7-
 STIKELEATHER REALTY AND INVESTMENTS CO. V. BROADWAY

 Opinion of the Court

22. [Defendant-Tenant] and [Defendant-Tenant’s] son[,
RB,] were present when a new detector was installed by
[Plaintiff-Landlord’s] employee in 2014.

....

47. RB testified that the property did not have a
Smoke/Carbon detector upon initial[] occupancy. There
[was] a blank spot where it appeared one had previously
been with a painted[-]over bracket.

48. RB was present when [Plaintiff-Landlord’s] staff came
out and installed a Smoke/Carbon detector, a few days
after the first court appearance in 2014. RB watched the
installation and [Plaintiff-Landlord’s] staff did not remove
an old detector prior to installing a new one.

....

33. [Defendant-Tenant] did not think it was fair to be
evicted for being seventeen days late on the rent so he went
to City Code Enforcement.

....

40. The city inspected the property and issued a list of code
violations. Plaintiff[-Landlord] admitted the Code
Enforcement report as Plaintiff’s Exhibit 3.

41. The Code Enforcement report does not list the
carbon/smoke detector.

....

68. [Mr. Stikeleather] told [Defendant-Tenant] several
times to put repair requests in writing, as required by the
lease.

 -8-
 STIKELEATHER REALTY AND INVESTMENTS CO. V. BROADWAY

 Opinion of the Court

 69. [Mr. Stikeleather] testified that he never received any
 written or verbal repair requests from [Defendant-Tenant].

 ....

 78. [Mr. Stikeleather] testified that he has made numerous
 requests for access and for a key to the Property, including
 by certified mail, so that he could do an inspection and
 make repairs to the property. [Defendant-Tenant] never
 responded to those requests.

 79. [Defendant-Tenant] did not introduce any portion of
 the Charlotte City Housing Code.

 ....

 1. [Defendant-Tenant] did not pay rent for March, April or
 May 2014, and that the monthly rent was $500.

 Based upon these findings, the trial judge concluded the following as a matter

of law:

 2. [Defendant-Tenant] has failed that [sic] show that
 [Plaintiff-Landlord] breached the implied warranty of
 habitability for the issues related to the flooded basement,
 broken step, inoperable and broken windows and faulty
 electrical system because [Defendant-Tenant] failed to
 provide proper written notice of these issues and also failed
 to provide reasonable access to [Plaintiff-Landlord] to
 permit an inspection to determine if there were any
 structural or electrical issues;

 3. Where [Plaintiff-Landlord] knew on or about June 26,
 2013, that the property did not have a smoke alarm or
 carbon monoxide detector and did not verify that the
 previously used device provided on or about that date by
 Mr. Kluth was operable, [Plaintiff-Landlord] violated the
 Residential Rental Agreement[s] Act which requires
 provision of an operable smoke alarm and carbon monoxide

 -9-
 STIKELEATHER REALTY AND INVESTMENTS CO. V. BROADWAY

 Opinion of the Court

 detector. [Defendant-Tenant] is therefore entitled to rent
 abatement;

 ....

 6. [Defendant-Tenant] is entitled to rent abatement of $150
 per month;

 7. [Plaintiff-Landlord’s] continued collection of rent
 without verifying that [Defendant-Tenant] had been
 provided an operable smoke alarm and carbon monoxide
 detector constituted an Unfair and Deceptive Trade
 Practice;

 8. Because [Plaintiff-Landlord] has committed an Unfair
 and Deceptive Trade Practice, [Defendant-Tenant’s]
 damages shall be trebled;

 9. [Defendant-Tenant’s] damages shall be offset by an
 abatement credit of $350 for March 2014 where
 [Defendant-]Tenant did not pay rent but before the new
 detector was installed and $500 per month for April and
 May 2014 where [Defendant-]Tenant did not pay rent but
 after the new detector was installed for a total abatement
 credit of $1350.

Based upon the foregoing, the trial judge entered the following judgment:

 1. Defendant[-]Tenant’s claim for rent abatement and
 Unfair and Deceptive Trade Practices is granted;

 2. Defendant[-]Tenant is awarded damages in the amount
 of $2250 ($1200 in rent abatement, trebled to $3600
 pursuant to Chapter 75 minus tenant’s abatement credit of
 $1350);

 3. Defendant-[Tenant] is entitled to reasonable attorney
 fees, pursuant to Chapter 75. [Defendant-Tenant] shall
 submit an affidavit for attorney fees and [Plaintiff-
 Landlord] shall have an opportunity to respond;

 - 10 -
 STIKELEATHER REALTY AND INVESTMENTS CO. V. BROADWAY

 Opinion of the Court

 4. All other counterclaims filed by [Defendant-Tenant] are
 denied.

 Plaintiff-Landlord appeals.

 II. Analysis

 Plaintiff-Landlord contends the trial court erred by (1) granting Defendant-

Tenant’s counterclaim for rent abatement under the Residential Rental Agreements

Act (“RRAA”), (2) improperly calculating the damage award under the RRAA, (3)

concluding the alleged RRAA violation constituted a breach of North Carolina’s

Unfair and Deceptive Trade Practices Act (“UDTP”), and (4) awarding Defendant-

Tenant reasonable attorney’s fees under UDTP. Because we agree the trial court

erred in concluding Plaintiff-Landlord violated the RRAA, the damages awarded for

rent abatement, which were trebled under UDTP, as well as the attorney’s fees

awarded under UDTP, must be reversed.

A. Standard of Review

 “The standard of review on appeal from a judgment entered after a non-jury

trial is whether there is competent evidence to support the trial court’s findings of

fact and whether the findings support the conclusions of law and ensuing judgment.”

Cartin v. Harrison, 151 N.C. App. 697, 699, 567 S.E.2d 174, 176 (2002) (internal

quotation marks and citation omitted). “In all actions tried without a jury, the trial

court is required to make specific findings of fact, state separately its conclusions of

 - 11 -
 STIKELEATHER REALTY AND INVESTMENTS CO. V. BROADWAY

 Opinion of the Court

law, and then direct judgment in accordance therewith.” Cardwell v. Henry, 145 N.C.

App. 194, 195, 549 S.E.2d 587, 588 (2001) (internal quotation marks and citations

omitted). The trial court’s findings of fact must include “specific ultimate facts . . .

sufficient for the appellate court to determine that the judgment is adequately

supported by competent evidence.” Montgomery v. Montgomery, 32 N.C. App. 154,

156-57, 231 S.E.2d 26, 28 (1977). Put another way, the trial court must make “specific

findings of the ultimate facts established by the evidence, admissions and

stipulations which are determinative of the questions involved in the action and

essential to support the conclusions of law reached.” Quick v. Quick, 305 N.C. 446,

452, 290 S.E.2d 653, 658 (1982). “Ultimate facts are the final resulting effect reached

by processes of logical reasoning from the evidentiary facts.” In re Anderson, 151 N.C.

App. 94, 97, 564 S.E.2d 599, 602 (2002) (citation omitted). The trial court’s

conclusions of law are reviewed de novo, wherein this Court “considers the matter

anew and freely substitutes its own judgment for that of the lower tribunal.” State v.

Williams, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (internal quotation marks

and citations omitted).

B. Violation of the RRAA

 Plaintiff-Landlord first contends the trial court erred in granting Defendant-

Tenant’s claim for rent abatement in violation of the RRAA. We agree.

 - 12 -
 STIKELEATHER REALTY AND INVESTMENTS CO. V. BROADWAY

 Opinion of the Court

 Specifically, Plaintiff-Landlord challenges the trial court’s conclusion of law

No. 3, which states:

 3. Where [Plaintiff-Landlord] knew on or about June
 26, 2013, that the property did not have a smoke alarm or
 carbon monoxide detector and did not verify that the
 previously used device provided on or about that date by
 Mr. Kluth was operable, [Plaintiff-Landlord] violated the
 Residential Rental Agreement[s] Act which requires
 provision of an operable smoke alarm and carbon monoxide
 detector. [Defendant-Tenant] is therefore entitled to rent
 abatement[.]

 This singly-enumerated conclusion actually contains two legal conclusions:

first, that Plaintiff-Landlord violated the RRAA; second, that Defendant-Tenant is

entitled to rent abatement. We therefore discuss each conclusion separately.

 Pursuant to the RRAA, codified at N.C. Gen. Stat. §§ 42-38 to -49 (2013), “a

landlord impliedly warrants to the tenant that rented or leased residential premises

are fit for human habitation. The implied warranty of habitability is co-extensive

with the provisions of the Act.” Miller v. C.W. Myers Trading Post, Inc., 85 N.C. App.

362, 366, 355 S.E.2d 189, 192 (1987) (citation omitted). The RRAA requires landlords

to provide fit premises and imposes upon them the following duties:

 (a) The landlord shall:

 (1) Comply with the current applicable building and
 housing codes[] . . . to the extent required by the operation
 of such codes[.]

 (2) Make all repairs and do whatever is necessary to put
 and keep the premises in a fit and habitable condition.

 - 13 -
 STIKELEATHER REALTY AND INVESTMENTS CO. V. BROADWAY

 Opinion of the Court

 (3) Keep all common areas of the premises in safe condition.

 (4) Maintain in good and safe working order and promptly
 repair all electrical, plumbing, sanitary, heating,
 ventilating, air conditioning, and other facilities and
 appliances supplied or required to be supplied by the
 landlord provided that notification of needed repairs is
 made to the landlord in writing by the tenant, except in
 emergency situations.

N.C. Gen. Stat. § 42-42(a)(1)-(4) (2013). The RRAA provides an affirmative cause of

action to a tenant for recovery of rent due to a landlord’s breach of the implied

warranty of habitability. See, e.g., Cotton v. Stanley, 86 N.C. App. 534, 537, 358

S.E.2d 692, 694 (1987) (“Tenants may bring an action for breach of the implied

warranty of habitability, seeking rent abatement, based on their landlord’s

noncompliance with [N.C. Gen. Stat.] § 42-42(a)” (citation omitted)); see also Allen v.

Simmons, 99 N.C. App. 636, 644, 394 S.E.2d 478, 482 (1990) (“Tenants may bring an

action seeking damages for breach of the implied warranty of habitability and may

also seek rent abatement for their landlord’s breach of the statute.”).

 The restitutionary remedy of rent abatement compensates tenants for

defective conditions of a premises which render it unfit for human habitation. See

Miller, 85 N.C. App. at 368, 355 S.E.2d at 193 (noting that rent abatement is “in the

nature of a restitutionary remedy[]”). This Court has held:

 - 14 -
 STIKELEATHER REALTY AND INVESTMENTS CO. V. BROADWAY

 Opinion of the Court

 [A] tenant may recover damages in the form of a rent
 abatement calculated as the difference between the fair
 rental value of the premises if as warranted (i.e., in full
 compliance with [N.C. Gen. Stat. §] 42-42(a)) and the fair
 rental value of the premises in their unfit condition for any
 period of the tenant’s occupancy during which the finder of
 fact determines the premises were uninhabitable, plus any
 special or consequential damages alleged and proved.

 Id. at 371, 355 S.E.2d at 194 (citations omitted). However, N.C. Gen. Stat. §

42-42(a) also imposes affirmative duties upon landlords to ensure premises are fit for

human habitation. Pertinent to the instant case, the RRAA requires landlords:

 (5) Provide operable smoke alarms[] . . . and install the
 smoke alarms in accordance with either the standards of
 the National Fire Protection Association or the minimum
 protection designated in the manufacturer’s instructions,
 which the landlord shall retain or provide as proof of
 compliance. The landlord shall replace or repair the smoke
 alarms within 15 days of receipt of notification if the
 landlord is notified of needed replacement or repairs in
 writing by the tenant. The landlord shall ensure that a
 smoke alarm is operable and in good repair at the
 beginning of each tenancy. . . .

 ....

 (7) Provide a minimum of one operable carbon monoxide
 alarm per rental unit per level[] . . . and install the carbon
 monoxide alarms in accordance with either the standards
 of the National Fire Protection Association or the minimum
 protection designated in the manufacturer’s instructions,
 which the landlord shall retain or provide as proof of
 compliance. A landlord that installs one carbon monoxide
 alarm per rental unit per level shall be deemed to be in
 compliance with standards under this subdivision covering
 the location and number of alarms. The landlord shall
 replace or repair the carbon monoxide alarms within 15

 - 15 -
 STIKELEATHER REALTY AND INVESTMENTS CO. V. BROADWAY

 Opinion of the Court

 days of receipt of notification if the landlord is notified of
 needed replacement or repairs in writing by the tenant.
 The landlord shall ensure that a carbon monoxide alarm is
 operable and in good repair at the beginning of each
 tenancy. . . .

N.C. Gen. Stat. § 42-42(a)(5), (7) (2013) (emphasis added). Breaches of provisions of

the RRAA such as these, included within the implied warranty of habitability, can be

remedied by retroactive rent abatement. However, the quantity of damages must be

appropriate. We recognize the importance of ensuring operable smoke alarms and

carbon monoxide alarms in rental units. Yet the amount a landlord is liable for a

violation of N.C. Gen. Stat. § 42-42(a)(5) or (7) requires an evaluation of fair market

value determined with more specificity than was calculated by the trial judge.

 In the instant case, in reviewing the trial court’s decision de novo, we hold its

findings of fact do not support its conclusion that Defendant-Tenant is entitled to rent

abatement. Therefore we reverse.

 While N.C. Gen. Stat. § 42-42(a)(5) and (7) impose upon landlords the duty to

provide operable smoke and carbon monoxide alarms, the duty is triggered only if a

landlord is notified of its needed repair or replacement, or if it is the beginning of a

tenancy. Here, Defendant-Tenant never notified Plaintiff-Landlord in writing, as

required, the alarm provided by Mr. Kluth was defective or inoperable. Regardless

of whether Plaintiff-Landlord discovered during the second pre-sale inspection the

property did not have an alarm, there was no finding Plaintiff-Landlord knew or

 - 16 -
 STIKELEATHER REALTY AND INVESTMENTS CO. V. BROADWAY

 Opinion of the Court

should have known the alarm provided by Mr. Kluth was not operable. Nor was there

a finding Plaintiff-Landlord was notified about its inoperability. Furthermore, the

trial court failed to make any finding as to when, if ever, a new tenancy was created

after Plaintiff-Landlord became the new property owner and manager. Lacking the

essential findings that Defendant-Tenant notified Plaintiff-Landlord the alarm

provided by Mr. Kluth needed replacement or repair, or that a new tenancy was

created after Plaintiff-Landlord became the property’s owner and manager, the trial

court’s findings of fact do not support its conclusion that Plaintiff-Landlord breached

the RRAA.

 As to the award of rent abatement, the trial court did not articulate its

rationale with any specificity in declaring how Plaintiff-Landlord’s alleged failure to

verify the property had an operable smoke alarm and carbon monoxide alarm—

without more—entitles Defendant-Tenant to a restitutionary remedy such as rent

abatement. The trial court made no finding that the premises was unfit or

uninhabitable during the period in which Defendant-Tenant paid rent. There was no

finding or articulation supporting the value of the premises in its “uninhabitable”

state, other than Defendant-Tenant’s testimony his apartment’s fair market value

dropped $200.00, when considering all issues he alleged were breaches of the implied

warranty of habitability.

 - 17 -
 STIKELEATHER REALTY AND INVESTMENTS CO. V. BROADWAY

 Opinion of the Court

 We recognize that in Cotton v. Stanely, 86 N.C. App. 534, 358 S.E.2d 692

(1987), a case decided prior to the enactment of either provision at issue,2 this Court

held indirect evidence of fair rental value, such as a tenant’s testimony as to his belief

of the “as is” fair rental value of the premises, is sufficient to support a calculation of

rent abatement damages to compensate for a landlord’s violation of N.C. Gen. Stat. §

42-42(a). Id. at 539, 358 S.E.2d at 695. This Court in Cotton held “[a] party is not

required to put on direct evidence to show fair rental value,” as a fact-finder is able

to “[f]rom their own experience with living conditions[]” determine the “as is” fair

rental value of the property to calculate an appropriate damage award for a tenant

due to a landlord’s violation of the RRAA, as it was enacted at the time. Id. In Cotton,

this Court concluded a landlord who breached the RRAA “[would] be liable for the

difference between the fair rental value of the units ‘as is’ and the units’ fair rental

value ‘as warranted,’ for the period between the expiration of a reasonable

opportunity to repair after notice to the [landlord] and the date repairs were made,

plus any special and consequential damages alleged and proven.” Id. at 539, 358

S.E.2d at 695-96.

 Here, Defendant-Tenant testified as to what he perceived was the property’s

fair market value in its allegedly dilapidated condition, which included a flooded

 2 N.C. Gen. Stat. § 42-42(a)(5) became effective in 1996. 1995 N.C. Sess. Laws 189, 191-92, ch.
111, § 2. N.C. Gen. Stat. § 42-42(a)(7) became effective in 2010. 2008 N.C. Sess. Laws 950, 953-54, ch.
219, § 2.

 - 18 -
 STIKELEATHER REALTY AND INVESTMENTS CO. V. BROADWAY

 Opinion of the Court

basement that occurred “at least 50 times,” a broken back step, frequent electrical

shortages, inoperable bedroom windows, a busted pipe in the kitchen that caused

water seepage for three to four months, mold in the kitchen and bedroom walls, a hole

in the apartment that rats entered through, and an uneven floor. Although the trial

judge concluded Plaintiff-Landlord did not breach the RRAA as to these other

issues—as Defendant-Tenant failed to provide proper written notice and reasonable

access to Plaintiff-Landlord to conduct an inspection—the trial judge determined

Defendant-Tenant should be entitled to $150.00 in rent abatement for each month

Plaintiff-Landlord allegedly violated the RRAA by failing to verify the operability of

the alarm. While this calculation is markedly difficult, the trial judge provided no

basis for how he reached it, other than “[i]n the totality, . . . the Court [extracted

$150.00] out of the $200.00 that [Defendant-Tenant] cited, [and] decided that was

appropriate.” We can discern no rationale for how $150.00 per month in rent

abatement is an appropriate calculation under these facts, or how a restitutionary

remedy such as rent abatement would be appropriate for an alleged violation of N.C.

Gen. Stat. § 42-42(a)(5) or (7) alone.

 In summary, lacking these and other specific findings of facts essential to

support its conclusions Plaintiff-Landlord breached the RRAA and Defendant-Tenant

is entitled to rent abatement, the trial court’s judgment must be reversed. Because

we conclude the trial court’s findings do not support its conclusion Plaintiff-Landlord

 - 19 -
 STIKELEATHER REALTY AND INVESTMENTS CO. V. BROADWAY

 Opinion of the Court

breached the RRAA, Defendant-Tenant’s claims for rent abatement and UDTP, as

well as the award of trebled damages and attorney’s fees pursuant to UDTP,

necessarily fail.

 III. Conclusion

 Based upon the foregoing and our review of the record, we reverse the trial

court’s judgment.

 REVERSED.

 Judges Stephens and Tyson concur.

 - 20 -