HUNTER, JR., ROBERT N., Judge.
Stikeleather Realty & Investments Co. ("Plaintiff-Landlord") appeals from a bench trial judgment awarding trebled rent abatement and attorney's fees to Elisha Broadway ("Defendant-Tenant") on claims of breach of the implied warranty of habitability and unfair and deceptive trade practices. We reverse.
I. Factual & Procedural History
On 19 March 2014, Plaintiff-Landlord initiated a summary ejectment action against Defendant-Tenant for breach of a residential lease agreement for failure to pay rent for the month of March. On 31 March 2014, Defendant-Tenant filed an answer and asserted the defense of retaliatory eviction pursuant to N.C. Gen.Stat. § 42-37.1, as well as counterclaims for (1) breach of the implied warranty of habitability pursuant to N.C. Gen.Stat. § 42-42, (2) unfair and deceptive trade practices pursuant to N.C. Gen.Stat. § 75-1.1 et seq., (3) unfair debt collection practices pursuant to N.C. Gen.Stat. § 75-50 et seq., (4) negligence, and (5) negligence per se.
On 22 April 2014, Plaintiff-Landlord filed an amended complaint, alleging Defendant-Tenant also breached the lease by keeping an unauthorized pet. On 2 May 2014, Defendant-Tenant filed an amended answer and counterclaim, which contained no substantive changes pertinent to this appeal. On 8 May 2014, the magistrate entered judgment in favor of Plaintiff-Landlord on the primary claim of possession and in favor of Defendant-Tenant on his counterclaim of breach of the implied warranty of habitability only, awarding him $1,000.00 in damages. Plaintiff appealed to the district court.
On 30 June 2014, the case was heard in Mecklenburg County District Court before the Honorable Matt Osman. At that time, Defendant-Tenant had already surrendered possession of the property. Therefore, the sole issue before the trial judge was Defendant-Tenant's counterclaim for breach of the implied warranty of habitability. The transcript of this bench trial, as well as the record on appeal, reveals the following pertinent facts.
In May 2010, Defendant-Tenant entered into a residential lease to rent a home located at 2600 Catalina Avenue in Charlotte ("the property") for $500 per month. At this time, the property was neither owned nor managed by Plaintiff-Landlord. The lease contained a page signed by Defendant-Tenant stating that a "Carbon/Smoke Detector"[1] existed in the home and that it was in good working condition when Defendant-Tenant took possession of the property. The lease also provided that Defendant-Tenant shall make requests for repairs in writing. On 4 June 2013, Mr. Kluth, a real estate broker, visited the property to obtain general information to list the house. On 10 June 2013, Mr. Kluth returned to the property for another inspection, this time bringing an interested buyer, Mr. Stikeleather, managing partner of Plaintiff-Landlord, a limited liability corporation in the business of buying and selling residential properties.
During this second pre-sale inspection, Mr. Stikeleather asked Defendant-Tenant if the property had a smoke alarm and carbon monoxide alarm. Defendant-Tenant responded that it did not. Mr. Kluth then went to his truck and returned with a smoke alarm and carbon monoxide alarm for Defendant-Tenant to put in the property.
*375 On or around 26 June 2013, Plaintiff-Landlord purchased the property and sent a letter to Defendant-Tenant notifying him that Plaintiff-Landlord was the new owner and property manager. The letter also directed Defendant-Tenant to call Plaintiff-Landlord to set up an inspection of the property and to put any requests for repairs in writing.
On or around 24 September 2013, Mr. Stikeleather went by the house to do an inspection, but it had to be "quick" because of the presence of an unauthorized pet on the premises. During this inspection, Mr. Stikeleather testified that he observed an alarm in the living room, plugged into an electrical outlet in the wall, but he admitted he did not verify whether it was working properly.
Near the middle of March 2014, Defendant-Tenant called Mr. Stikeleather and told him he would be late with March's rent; Mr. Stikeleather responded that he would file eviction papers, which he did on 19 March 2014. Two days after the parties appeared in small claims court near the end of March 2014, Plaintiff-Landlord sent his repairman to install a smoke alarm and carbon monoxide alarm in the premises. Defendant-Tenant felt it was unfair to be evicted for being only a few days late on rent, so he went to City Code Enforcement, which issued an inspection report that does not mention any issue with the property's smoke alarm and carbon monoxide alarm. Defendant-Tenant did not pay rent for the months of March, April, or May 2014.
The day after the bench trial, on 1 July 2014, the trial judge entered a judgment containing the following pertinent findings of fact, whose order has been reorganized by this Court in an effort to improve clarity:
3. [Defendant-Tenant] lived at 2600 Catalina, Charlotte, NC ("the property"), for four years and three months.
....
43. [Defendant-Tenant's] son, Ronald Broadway (RB), lived with his father at the property.
....
4. At the time [Defendant-Tenant] took possession of the property in 2010 it was owned and managed by a different landlord than the Plaintiff in this action.
....
65. [Mr.] Stikeleather is the managing partner of the LLC that is [Plaintiff-Landlord].
....
76. [Plaintiff-Landlord's] LLC owns approximately 200 properties and manages another 300 properties.
....
55. Mike Kluth is a real estate broker in Charlotte and he sold the property to [Plaintiff-Landlord].
56. Prior to selling the house, Mr. Kluth visited the property in June 2013 to obtain general information to list the house.
....
58. During a second pre-sale inspection of the property in June 2013, [Defendant-Tenant] told Mr. Kluth and [Mr. Stikeleather] about the flooding in the basement. The basement was dry when Mr. Kluth and [Mr. Stikeleather] saw it.
59. During the second inspection [Mr. Stikeleather] asked [Defendant-Tenant] about a Smoke/Carbon detector.
[Defendant-Tenant] said there was not one present in the property.
60. Mr. Kluth then went to his car and got a Smoke/Carbon detector to place in the house.
61. Mr. Kluth does not know whether the detector, which was not new, was operational. The detector could be plugged into the wall and could also be run on batteries.
62. [Defendant-Tenant] testified that the detector provided by Mr. Kluth did not work.
....
38. In June 2013, [Plaintiff-Landlord] notified [Defendant-Tenant] in writing that the property had been sold and that [Plaintiff-Landlord] was the new owner and property manager. Plaintiff[-Landlord] admitted Plaintiff's Exhibit 2, a letter dated June 26, 2013, detailing the change in ownership.
39. In addition to telling [Defendant-Tenant] about the new management company, *376 Plaintiff[-Landlord's] Exhibit 2 also directed [Defendant-Tenant] to put any requests for repair in writing and asked [Defendant-Tenant] to call [Plaintiff-Landlord] to set up an inspection.
....
66. The only potential repair issue that [Plaintiff-Landlord] was aware of at the time of the purchase was the basement and the flooding.
....
2. The parties have also stipulated to the existence of a lease between [Defendant-Tenant] and Plaintiff[-]Landlord....
....
21. The lease contains a page signed by [Defendant-Tenant] stating that the property had a "Carbon/Smoke Detector" in the unit and that it was in good working condition when [Defendant-Tenant] took possession in 2010.
....
29. Paragraph 17 of the lease states that [Defendant-Tenant] shall make a request for repair in writing.
....
70. After taking ownership of the property, [Mr. Stikeleather] went by the house in the fall of 2013 to do a quick inspection. It was a quick inspection due to the presence of [Defendant-Tenant's] dog.
71. [Mr. Stikeleather] testified that the dog was not permitted at the property[.]
72. [Mr. Stikeleather] did observe a detector that was plugged in during [the] fall 2013 inspection but did not verify whether it was working properly.
....
32. [Defendant-Tenant] called [Mr. Stikeleather] to tell him that he would be late with the March [2014] rent and [Mr. Stikeleather] said that he would file eviction papers.
....
75. [Plaintiff-Landlord] sent his repairman to install a detector after the first hearing in small claims court in late March 2014.
....
22. [Defendant-Tenant] and [Defendant-Tenant's] son[, RB,] were present when a new detector was installed by [Plaintiff-Landlord's] employee in 2014.
....
47. RB testified that the property did not have a Smoke/Carbon detector upon initial[ ] occupancy. There [was] a blank spot where it appeared one had previously been with a painted[-]over bracket.
48. RB was present when [Plaintiff-Landlord's] staff came out and installed a Smoke/Carbon detector, a few days after the first court appearance in 2014. RB watched the installation and [Plaintiff-Landlord's] staff did not remove an old detector prior to installing a new one.
....
33. [Defendant-Tenant] did not think it was fair to be evicted for being seventeen days late on the rent so he went to City Code Enforcement.
....
40. The city inspected the property and issued a list of code violations. Plaintiff[-Landlord] admitted the Code Enforcement report as Plaintiff's Exhibit 3.
41. The Code Enforcement report does not list the carbon/smoke detector.
....
68. [Mr. Stikeleather] told [Defendant-Tenant] several times to put repair requests in writing, as required by the lease.
69. [Mr. Stikeleather] testified that he never received any written or verbal repair requests from [Defendant-Tenant].
....
78. [Mr. Stikeleather] testified that he has made numerous requests for access and for a key to the Property, including by certified mail, so that he could do an inspection and make repairs to the property. [Defendant-Tenant] never responded to those requests.
79. [Defendant-Tenant] did not introduce any portion of the Charlotte City Housing Code.
....
*377 1. [Defendant-Tenant] did not pay rent for March, April or May 2014, and that the monthly rent was $500.
Based upon these findings, the trial judge concluded the following as a matter of law:
2. [Defendant-Tenant] has failed that [sic] show that [Plaintiff-Landlord] breached the implied warranty of habitability for the issues related to the flooded basement, broken step, inoperable and broken windows and faulty electrical system because [Defendant-Tenant] failed to provide proper written notice of these issues and also failed to provide reasonable access to [Plaintiff-Landlord] to permit an inspection to determine if there were any structural or electrical issues;
3. Where [Plaintiff-Landlord] knew on or about June 26, 2013, that the property did not have a smoke alarm or carbon monoxide detector and did not verify that the previously used device provided on or about that date by Mr. Kluth was operable, [Plaintiff-Landlord] violated the Residential Rental Agreement[s] Act which requires provision of an operable smoke alarm and carbon monoxide detector. [Defendant-Tenant] is therefore entitled to rent abatement;
....
6. [Defendant-Tenant] is entitled to rent abatement of $150 per month;
7. [Plaintiff-Landlord's] continued collection of rent without verifying that [Defendant-Tenant] had been provided an operable smoke alarm and carbon monoxide detector constituted an Unfair and Deceptive Trade Practice;
8. Because [Plaintiff-Landlord] has committed an Unfair and Deceptive Trade Practice, [Defendant-Tenant's] damages shall be trebled;
9. [Defendant-Tenant's] damages shall be offset by an abatement credit of $350 for March 2014 where [Defendant-]Tenant did not pay rent but before the new detector was installed and $500 per month for April and May 2014 where [Defendant-]Tenant did not pay rent but after the new detector was installed for a total abatement credit of $1350.
Based upon the foregoing, the trial judge entered the following judgment:
1. Defendant[-]Tenant's claim for rent abatement and Unfair and Deceptive Trade Practices is granted;
2. Defendant[-]Tenant is awarded damages in the amount of $2250 ($1200 in rent abatement, trebled to $3600 pursuant to Chapter 75 minus tenant's abatement credit of $1350);
3. Defendant-[Tenant] is entitled to reasonable attorney fees, pursuant to Chapter 75. [Defendant-Tenant] shall submit an affidavit for attorney fees and [Plaintiff-Landlord] shall have an opportunity to respond;
4. All other counterclaims filed by [Defendant-Tenant] are denied.
Plaintiff-Landlord appeals.
II. Analysis
Plaintiff-Landlord contends the trial court erred by (1) granting Defendant-Tenant's counterclaim for rent abatement under the Residential Rental Agreements Act ("RRAA"), (2) improperly calculating the damage award under the RRAA, (3) concluding the alleged RRAA violation constituted a breach of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTP"), and (4) awarding Defendant-Tenant reasonable attorney's fees under UDTP. Because we agree the trial court erred in concluding Plaintiff-Landlord violated the RRAA, the damages awarded for rent abatement, which were trebled under UDTP, as well as the attorney's fees awarded under UDTP, must be reversed.
A. Standard of Review
"The standard of review on appeal from a judgment entered after a non-jury trial is whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment." Cartin v. Harrison, 151 N.C.App. 697, 699, 567 S.E.2d 174, 176 (2002) (internal quotation marks and citation omitted). "In all actions tried without a jury, the trial court is required to make specific findings of fact, state separately its conclusions of law, and then direct judgment *378 in accordance therewith." Cardwell v. Henry, 145 N.C.App. 194, 195, 549 S.E.2d 587, 588 (2001) (internal quotation marks and citations omitted). The trial court's findings of fact must include "specific ultimate facts ... sufficient for the appellate court to determine that the judgment is adequately supported by competent evidence." Montgomery v. Montgomery, 32 N.C.App. 154, 156-57, 231 S.E.2d 26, 28 (1977). Put another way, the trial court must make "specific findings of the ultimate facts established by the evidence, admissions and stipulations which are determinative of the questions involved in the action and essential to support the conclusions of law reached." Quick v. Quick, 305 N.C. 446, 452, 290 S.E.2d 653, 658 (1982). "Ultimate facts are the final resulting effect reached by processes of logical reasoning from the evidentiary facts." In re Anderson, 151 N.C.App. 94, 97, 564 S.E.2d 599, 602 (2002) (citation omitted). The trial court's conclusions of law are reviewed de novo, wherein this Court "considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." State v. Williams, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (internal quotation marks and citations omitted).
B. Violation of the RRAA
Plaintiff-Landlord first contends the trial court erred in granting Defendant-Tenant's claim for rent abatement in violation of the RRAA. We agree.
Specifically, Plaintiff-Landlord challenges the trial court's conclusion of law No. 3, which states:
3. Where [Plaintiff-Landlord] knew on or about June 26, 2013, that the property did not have a smoke alarm or carbon monoxide detector and did not verify that the previously used device provided on or about that date by Mr. Kluth was operable, [Plaintiff-Landlord] violated the Residential Rental Agreement[s] Act which requires provision of an operable smoke alarm and carbon monoxide detector. [Defendant-Tenant] is therefore entitled to rent abatement[.]
This singly-enumerated conclusion actually contains two legal conclusions: first, that Plaintiff-Landlord violated the RRAA; second, that Defendant-Tenant is entitled to rent abatement. We therefore discuss each conclusion separately.
Pursuant to the RRAA, codified at N.C. Gen.Stat. §§ 42-38 to -49 (2013), "a landlord impliedly warrants to the tenant that rented or leased residential premises are fit for human habitation. The implied warranty of habitability is co-extensive with the provisions of the Act." Miller v. C.W. Myers Trading Post, Inc., 85 N.C.App. 362, 366, 355 S.E.2d 189, 192 (1987) (citation omitted). The RRAA requires landlords to provide fit premises and imposes upon them the following duties:
(a) The landlord shall:
(1) Comply with the current applicable building and housing codes[ ] ... to the extent required by the operation of such codes[.]
(2) Make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition.
(3) Keep all common areas of the premises in safe condition.
(4) Maintain in good and safe working order and promptly repair all electrical, plumbing, sanitary, heating, ventilating, air conditioning, and other facilities and appliances supplied or required to be supplied by the landlord provided that notification of needed repairs is made to the landlord in writing by the tenant, except in emergency situations.
N.C. Gen.Stat. § 42-42(a)(1)-(4) (2013). The RRAA provides an affirmative cause of action to a tenant for recovery of rent due to a landlord's breach of the implied warranty of habitability. See, e.g., Cotton v. Stanley, 86 N.C.App. 534, 537, 358 S.E.2d 692, 694 (1987) ("Tenants may bring an action for breach of the implied warranty of habitability, seeking rent abatement, based on their landlord's noncompliance with [N.C. Gen.Stat.] § 42-42(a) " (citation omitted)); see also Allen v. Simmons, 99 N.C.App. 636, 644, 394 S.E.2d 478, 482 (1990) ("Tenants may bring an action seeking damages for breach of the implied warranty of habitability and may also *379 seek rent abatement for their landlord's breach of the statute.").
The restitutionary remedy of rent abatement compensates tenants for defective conditions of a premises which render it unfit for human habitation. See Miller, 85 N.C.App. at 368, 355 S.E.2d at 193 (noting that rent abatement is "in the nature of a restitutionary remedy[ ]"). This Court has held:
[A] tenant may recover damages in the form of a rent abatement calculated as the difference between the fair rental value of the premises if as warranted (i.e., in full compliance with [N.C. Gen.Stat. § ] 42-42(a)) and the fair rental value of the premises in their unfit condition for any period of the tenant's occupancy during which the finder of fact determines the premises were uninhabitable, plus any special or consequential damages alleged and proved.
Id. at 371, 355 S.E.2d at 194 (citations omitted). However, N.C. Gen.Stat. § 42-42(a) also imposes affirmative duties upon landlords to ensure premises are fit for human habitation. Pertinent to the instant case, the RRAA requires landlords:
(5) Provide operable smoke alarms [ ] ... and install the smoke alarms in accordance with either the standards of the National Fire Protection Association or the minimum protection designated in the manufacturer's instructions, which the landlord shall retain or provide as proof of compliance. The landlord shall replace or repair the smoke alarms within 15 days of receipt of notification if the landlord is notified of needed replacement or repairs in writing by the tenant. The landlord shall ensure that a smoke alarm is operable and in good repair at the beginning of each tenancy....
....
(7) Provide a minimum of one operable carbon monoxide alarm per rental unit per level [ ] ... and install the carbon monoxide alarms in accordance with either the standards of the National Fire Protection Association or the minimum protection designated in the manufacturer's instructions, which the landlord shall retain or provide as proof of compliance. A landlord that installs one carbon monoxide alarm per rental unit per level shall be deemed to be in compliance with standards under this subdivision covering the location and number of alarms. The landlord shall replace or repair the carbon monoxide alarms within 15 days of receipt of notification if the landlord is notified of needed replacement or repairs in writing by the tenant. The landlord shall ensure that a carbon monoxide alarm is operable and in good repair at the beginning of each tenancy....
N.C. Gen.Stat. § 42-42(a)(5), (7) (2013) (emphasis added). Breaches of provisions of the RRAA such as these, included within the implied warranty of habitability, can be remedied by retroactive rent abatement. However, the quantity of damages must be appropriate. We recognize the importance of ensuring operable smoke alarms and carbon monoxide alarms in rental units. Yet the amount a landlord is liable for a violation of N.C. Gen.Stat. § 42-42(a)(5) or (7) requires an evaluation of fair market value determined with more specificity than was calculated by the trial judge.
In the instant case, in reviewing the trial court's decision de novo, we hold its findings of fact do not support its conclusion that Defendant-Tenant is entitled to rent abatement. Therefore we reverse.
While N.C. Gen.Stat. § 42-42(a)(5) and (7) impose upon landlords the duty to provide operable smoke and carbon monoxide alarms, the duty is triggered only if a landlord is notified of its needed repair or replacement, or if it is the beginning of a tenancy. Here, Defendant-Tenant never notified Plaintiff-Landlord in writing, as required, the alarm provided by Mr. Kluth was defective or inoperable. Regardless of whether Plaintiff-Landlord discovered during the second pre-sale inspection the property did not have an alarm, there was no finding Plaintiff-Landlord knew or should have known the alarm provided by Mr. Kluth was not operable. Nor was there a finding Plaintiff-Landlord was notified about its inoperability. Furthermore, the trial court failed to make any finding as to when, if ever, *380 a new tenancy was created after Plaintiff-Landlord became the new property owner and manager. Lacking the essential findings that Defendant-Tenant notified Plaintiff-Landlord the alarm provided by Mr. Kluth needed replacement or repair, or that a new tenancy was created after Plaintiff-Landlord became the property's owner and manager, the trial court's findings of fact do not support its conclusion that Plaintiff-Landlord breached the RRAA.
As to the award of rent abatement, the trial court did not articulate its rationale with any specificity in declaring how Plaintiff-Landlord's alleged failure to verify the property had an operable smoke alarm and carbon monoxide alarm-without more-entitles Defendant-Tenant to a restitutionary remedy such as rent abatement. The trial court made no finding that the premises was unfit or uninhabitable during the period in which Defendant-Tenant paid rent. There was no finding or articulation supporting the value of the premises in its "uninhabitable" state, other than Defendant-Tenant's testimony his apartment's fair market value dropped $200.00, when considering all issues he alleged were breaches of the implied warranty of habitability.
We recognize that in Cotton v. Stanley, 86 N.C.App. 534, 358 S.E.2d 692 (1987), a case decided prior to the enactment of either provision at issue,[2] this Court held indirect evidence of fair rental value, such as a tenant's testimony as to his belief of the "as is" fair rental value of the premises, is sufficient to support a calculation of rent abatement damages to compensate for a landlord's violation of N.C. Gen.Stat. § 42-42(a). Id. at 539, 358 S.E.2d at 695. This Court in Cotton held "[a] party is not required to put on direct evidence to show fair rental value," as a fact-finder is able to "[f]rom their own experience with living conditions[ ]" determine the "as is" fair rental value of the property to calculate an appropriate damage award for a tenant due to a landlord's violation of the RRAA, as it was enacted at the time. Id. In Cotton, this Court concluded a landlord who breached the RRAA "[would] be liable for the difference between the fair rental value of the units 'as is' and the units' fair rental value 'as warranted,' for the period between the expiration of a reasonable opportunity to repair after notice to the [landlord] and the date repairs were made, plus any special and consequential damages alleged and proven." Id. at 539, 358 S.E.2d at 695-96.
Here, Defendant-Tenant testified as to what he perceived was the property's fair market value in its allegedly dilapidated condition, which included a flooded basement that occurred "at least 50 times," a broken back step, frequent electrical shortages, inoperable bedroom windows, a busted pipe in the kitchen that caused water seepage for three to four months, mold in the kitchen and bedroom walls, a hole in the apartment that rats entered through, and an uneven floor. Although the trial judge concluded Plaintiff-Landlord did not breach the RRAA as to these other issues-as Defendant-Tenant failed to provide proper written notice and reasonable access to Plaintiff-Landlord to conduct an inspection-the trial judge determined Defendant-Tenant should be entitled to $150.00 in rent abatement for each month Plaintiff-Landlord allegedly violated the RRAA by failing to verify the operability of the alarm. While this calculation is markedly difficult, the trial judge provided no basis for how he reached it, other than "[i]n the totality, ... the Court [extracted $150.00] out of the $200.00 that [Defendant-Tenant] cited, [and] decided that was appropriate." We can discern no rationale for how $150.00 per month in rent abatement is an appropriate calculation under these facts, or how a restitutionary remedy such as rent abatement would be appropriate for an alleged violation of N.C. Gen.Stat. § 42-42(a)(5) or (7) alone.
In summary, lacking these and other specific findings of facts essential to support its *381 conclusions Plaintiff-Landlord breached the RRAA and Defendant-Tenant is entitled to rent abatement, the trial court's judgment must be reversed. Because we conclude the trial court's findings do not support its conclusion Plaintiff-Landlord breached the RRAA, Defendant-Tenant's claims for rent abatement and UDTP, as well as the award of trebled damages and attorney's fees pursuant to UDTP, necessarily fail.
III. Conclusion
Based upon the foregoing and our review of the record, we reverse the trial court's judgment.
REVERSED.
Judges STEPHENS and TYSON concur.

While the word "detector" appears throughout the record on appeal, this Court uses "alarm" synonymously, in order to reflect amendments by the N.C. General Assembly to this same effect. See 2012 N.C. Sess. Laws 350, 350-52, ch. 92, § 1-4 (replacing the word "detector" with "alarm" throughout provisions of the Residential Rental Agreements Act).

N.C. Gen.Stat. § 42-42(a)(5) became effective in 1996. 1995 N.C. Sess. Laws 189, 191-92, ch. 111, § 2. N.C. Gen.Stat. § 42-42(a)(7) became effective in 2010. 2008 N.C. Sess. Laws 950, 953-54, ch. 219, § 2.