IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-238

Filed 3 December 2025

Mecklenburg County, No. 23CVS003482-590

BRIAN HORNE, Plaintiff,

v.

GINKGO AURORA LLC & GINKGO OBC LLC, Defendants.

Appeal by Plaintiff from judgment entered 3 July 2024 by Judge Bradley B. Letts in Mecklenburg County Superior Court. Heard in the Court of Appeals 9 September 2025.

*The Law Offices of Andrew L. Gordon, PLLC, by Andrew Gordon, for Plaintiff-Appellant.*

*Higgins & Owens, PLLC, by Sara W. Higgins, for Defendants-Appellees.*

COLLINS, Judge.

This action arises from a dispute over the habitability of an apartment. Plaintiff, Brian Horne, appeals the trial court's entry of judgment in favor of Defendants, Ginkgo Aurora LLC and Ginkgo OBC LLC. Plaintiff argues that the trial court erred by entering judgment for Defendants on Plaintiff's claims for breach of contract, breach of implied warranty of habitability and violation of the Residential Rental Agreements Act, imminently dangerous conditions, unfair and deceptive trade practices, wrongful eviction, and violation of prohibited acts by debt collectors.

Plaintiff further argues that the trial court erred by entering judgment for Defendants for $7,251.21 in past-due rent and related fees. For the reasons discussed below, we affirm the trial court's judgment.

## I.  Background

Plaintiff filed a complaint in February 2023 against Defendants for breach of contract, breach of implied warranty of habitability and violation of the Residential Rental Agreements Act, imminently dangerous conditions, unfair and deceptive trade practices, wrongful eviction, and violation of prohibited acts by debt collectors. Defendants answered and counterclaimed for $9,339.21 in past-due rent and fees.

A bench trial was held in March 2024 where the evidence presented tended to show the following: Plaintiff entered into an apartment lease with Ginkgo OBC LLC for February 2021 until March 2022. Plaintiff entered into a lease with Ginkgo Aurora LLC for March 2022 until March 2023. Plaintiff resided in the apartment from February 2021 until approximately February 2023, when he voluntarily vacated the apartment and filed the current action.

After Plaintiff vacated the apartment and filed his complaint, Plaintiff received letters from a collection agency attempting to collect $9,339.21 allegedly owed to Defendants. At trial, Defendants acknowledged that this amount included an improper charge for rent when the apartment was being renovated after Plaintiff had moved out and could not have been re-rented.

Both apartment leases required Plaintiff to send maintenance requests to

Defendants in writing or through Defendants' online portal. During his tenancy, Plaintiff submitted a number of service requests regarding various issues with the apartment.

Plaintiff reported a water stain on the ceiling of his bedroom. Although the report did not indicate that there was an active leak, Plaintiff testified at trial that there was an active leak and that he had notified management of it.

Plaintiff requested maintenance of the apartment's thermostat and heater on two consecutive days. Both requests were marked as "Resolved" in the online maintenance portal on the same day Plaintiff submitted them.

Plaintiff twice reported mold in the bathroom. The bathroom was treated after each report. Plaintiff reported mold in the washing machine. The issue was marked as "Resolved" in the online maintenance portal.

Plaintiff hired a certified mold inspector, Ron Yountz, to inspect and test the apartment for mold. Yountz generated three reports based on three different surveys of the apartment. Although Yountz's reports identified mold in the apartment and recommended remediation measures, none of the three reports identified dangerous or uninhabitable conditions. At trial, Yountz testified that if dangerous or uninhabitable conditions had existed on the premises, he would have noted this in his reports.

After the trial, judgment was entered in favor of Defendants on all claims. The trial court found that Plaintiff's apartment was not uninhabitable or imminently

dangerous and thus concluded that Defendants did not commit unfair or deceptive trade practices and did not constructively evict Plaintiff. The trial court further found and concluded that Defendants did not violate the Debt Collector's Act and entered judgment in Defendants' favor for $7,251.21 in unpaid rent and related fees. Plaintiff appeals.

## II. Discussion

Plaintiff argues that the trial court erred by entering judgment for Defendants on Plaintiff's claims. Plaintiff further argues that the trial court erred by entering judgment for Defendants for $7,251.21 in past-due rent and related fees.

## A. Standard of Review

"The standard of review on appeal from a judgment entered after a non-jury trial is whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment." *Stikeleather Realty & Invs. Co. v. Broadway*, 242 N.C. App. 507, 515 (2015) (citation omitted). "When we review decisions from a bench trial, findings of fact have the force and effect of a verdict by a jury and are conclusive on appeal if there is evidence to support them, even though the evidence might sustain a finding to the contrary." *Onnipauper LLC v. Dunston*, 290 N.C. App. 486, 489 (2023) (cleaned up). "But conclusions of law drawn by the trial court from its findings of fact are reviewable de novo on appeal." *Id.* (citation omitted). "Under a de novo review, the court considers the matter anew and freely substitutes its own judgment for that of the lower

tribunal." *Id.* (citation omitted).

"The label of fact put upon a conclusion of law will not defeat appellate review." *Id.* (citation omitted). "Thus, findings of fact that are actually conclusions of law will be reviewed as conclusions of law." *Id.* "And determinations reached by application of legal principles are conclusion of law." *Id.* (citation omitted).

Plaintiff has failed to challenge any of the trial court's findings of fact. The facts are thus binding on appeal. *See Carolina Marlin Club Marina Ass'n v. Preddy*, 238 N.C. App. 215, 220 (2014).

## B. Implied Warranty of Habitability and Imminently Dangerous Conditions

Plaintiff first argues that Defendants "breached the implied warranty of habitability by failing to maintain the heat and roof at the premises and by failing to repair the imminently dangerous conditions within a reasonable time. . . ." Plaintiff alleges the following three imminently dangerous conditions existed in the apartment: (1) "unsafe ceilings or roofs," (2) "lack of an operable heating facility during the winter," and (3) "excessive standing water, sewage, or flooding problems caused by plumbing leaks or inadequate drainage that contribute to mosquito infestation or mold." (internal record citations omitted).

Under the Residential Rental Agreements Act, a landlord must comply with applicable housing codes, repair imminently dangerous conditions within a reasonable period of time, and maintain in good working order "all electrical,

plumbing, sanitary, heating, ventilating, air conditioning, and other facilities and appliances supplied . . . ." N.C. Gen. Stat. § 42-42(a)(4) (2024). Imminently dangerous conditions include "[e]xcessive standing water, sewage, or flooding problems caused by plumbing leaks or inadequate drainage that contribute to mosquito infestation or mold." *Id.* § 42-42(a)(8)(l).

These statutory requirements "create an implied warranty of habitability, such that a landlord warrants to the tenant that . . . [the] premises are fit for human habitation." *Creekside Apartments v. Poteat*, 116 N.C. App. 26, 34 (1994) (quotation marks and citation omitted). "The implied warranty of habitability is co-extensive with the provisions of the [Residential Rental Agreements] Act." *Miller v. C.W. Meyers Trading Post, Inc.*, 85 N.C. App. 362, 366 (1987). If a landlord fails to comply with the statutory requirements, a tenant has an affirmative cause of action for recovery of rent actually paid. *Id.* at 368.

The trial court made the following relevant findings of fact:

> 13. Plaintiff submitted several service requests regarding various issues in the Premises including a water stain on the ceiling of his bedroom.
>
> . . . .
>
> 15. Landlord addressed the service requests submitted by Plaintiff, although not always to Plaintiff's satisfaction or as quickly as would have been ideal.
>
> . . . .
>
> 21. Deposition evidence establishes that following a

request by Plaintiff to address mold, remedial efforts were embarked upon by Defendants in the Premises and[] no further service requests were forthcoming in the portal or in writing by Plaintiff after February 2021, related to mold either on the ceiling or in the washing machine unit until 2022.

. . . .

28. On November 28, 2022, Landlord's assistant property manager and regional maintenance supervisor both inspected the areas that Plaintiff contended rendered the Premises uninhabitable and concluded that they did not present safety or habitability concerns.

. . . .

44. After Plaintiff vacated the Premises, the final inspection of the Premises did not indicate the presence of mold or water intrusion. No evidence was adduced at trial that mold remediation was required in the Premises and no leak was found associated with the bedroom ceiling stain.

. . . .

52. Ms. Leak was aware of the residential lease used by Defendants and the Defendants' policy for management of the Premises. (Plaintiff's exhibit #41). Ms. Leak was the property manager when the Plaintiff resided at the Premises. No evidence exists that the requests for service and repairs were ignored or not successfully completed in the Premises by Defendants on-property maintenance department. (See also Plaintiff's exhibit #42).

These unchallenged findings of fact are binding on appeal. *See Carolina Marlin Club Marina Ass'n,* 238 N.C. App. at 220. Furthermore, our independent review of the record reveals that each finding of fact is supported by record evidence. On these facts, the trial court made the following conclusions of law:

HORNE V. GINKGO AURORA LLC

*Opinion of the Court*

57. The only provision of N.C. Gen. Stat. § 42-42(8) that is even potentially implicated by the evidence in this case is subsection (1): "Excessive standing water, sewage, or flooding problems caused by plumbing leaks or inadequate drainage that contribute to mosquito infestation or mold." This provision by its express terms does not apply, however, because there was no evidence of any excessive standing water, sewage, or flooding problems in the Premises.[1]

. . . .

2. Plaintiff did not meet the burden of proof to show that Landlord breached any warranty of habitability with respect to the Premises or that the Premises were uninhabitable at any time during which he resided at the Premises.

3. Plaintiff's second claim for relief alleging an imminently dangerous condition in the Premises during his tenancy, pursuant to N.C. Gen. Stat. [§] 42-42(8), does not permit recovery because there was no evidence of any excessive standing water, sewage, or flooding problems in the Premises.

The trial court's findings of fact support its conclusions that Plaintiff failed to show that the apartment was uninhabitable because imminently dangerous conditions existed on the premises. Accordingly, the trial court did not err by entering judgment for Defendants on this claim.

## C. Constructive Eviction and Unfair and Deceptive Trade Practices

---

[1] Here, the trial court made both findings of fact and conclusions of law in a section of the judgment labeled "Legal Analysis." Assertion 57, and later 61, require the application of legal principles. "Because we are not bound by the trial court's labels, we will review these 'findings of facts' as conclusions of law, as they were reached by an application of legal principles." *Onnipauper*, 290 N.C. App. at 489.

Plaintiff also argues that Defendants' failure to maintain the apartment in a habitable condition and subsequent demands for rent payment constitute a constructive eviction and unfair and deceptive trade practices.

Constructive eviction is a breach of the lease by the landlord which makes the property untenable, causing the tenant to abandon the property. *Taha v. Thompson*, 120 N.C. App. 697, 705 (1995). Collecting rent for a residence while knowing that the residence is uninhabitable can constitute an unfair or deceptive trade practice under N.C. Gen. Stat. § 75-1.1(a). *Pierce v. Reichard*, 163 N.C. App. 294, 301-02 (2004).

Plaintiff's constructive eviction and unfair and deceptive trade practices claims are predicated on his claim of breach of the implied warranty of habitability. Because Plaintiff failed to show that the apartment was uninhabitable, the trial court did not err by entering judgment in favor of Defendants on Plaintiff's constructive eviction and unfair and deceptive trade practices claims.

**D. Prohibited Acts by Debt Collectors**

Plaintiff next argues that the trial court erred by concluding that Defendants did not violate the North Carolina Debt Collection Act. Plaintiff argues specifically that Defendants falsely represented to the trial court the amount of Plaintiff's debt, in violation of N.C. Gen. Stat. § 75-54(4), in the following three ways: (1) demanding full rent for an uninhabitable property; (2) improperly claiming in their counterclaim that Plaintiff owed $9,339.21, rather than $7,251.21; and (3) improperly charging Plaintiff multiple administrative fees in excess of the "highest administrative fee

authorized by" N.C. Gen. Stat. § 42-46.

Under North Carolina's Debt Collection Act, "[n]o debt collector shall collect or attempt to collect a debt . . . by any fraudulent, deceptive or misleading representation." N.C. Gen. Stat. § 75-54 (2024).

### 1. *Rent*

Plaintiff claims that Defendants falsely represented the amount of Plaintiff's debt to the trial court by demanding full rent when the apartment was uninhabitable.

Plaintiff's claim is predicated on his claims of breach of the implied warranty of habitability and constructive eviction. Because Plaintiff failed to show that the apartment was uninhabitable, the trial court did not err by concluding that Defendants did not violate the Act by demanding full rent for the apartment.

### 2. *Incorrect Counterclaim Amount*

Plaintiff next contends that Defendants falsely represented to the trial court the amount of Plaintiff's debt by incorrectly alleging in their counterclaim that Plaintiff owed $9,339.21 in past-due rent and related fees.

"Falsely representing the character, extent, or amount of a debt against a consumer or of its status in any legal proceeding" is a fraudulent, deceptive, or misleading representation. *Id.* § 75-54(4). "To prevail on a claim for violation of [section 75-54], one need not show deliberate acts of deceit or bad faith, but must nevertheless demonstrate that the act complained of possessed the tendency or capacity to mislead, or created the likelihood of deception." *Forsyth Mem'l Hosp., Inc.*

*v. Contreras*, 107 N.C. App. 611, 614 (1992) (quotation marks and citation omitted). A Debt Collection Act claim requires the following threshold elements: "the obligation owed must be a 'debt'"; "the one owing the obligation must be a 'consumer'"; and "the one trying to collect the obligation must be a 'debt collector.'" *Reid v. Ayers*, 138 N.C. App. 261, 263 (2000). Once the threshold requirements are met, a Debt Collection Act claim "must then meet the three generalized requirements found in section 75-1.1: (1) an unfair act (2) in or affecting commerce (3) proximately causing injury." *Id.* at 266. "For efficiency's sake, we will start with the proximate-injury element." *Onnipauper*, 290 N.C. App. at 495 (citation omitted).

In this case, after Plaintiff vacated the apartment, Defendants attempted to charge Plaintiff rent for the time period between 8 February 2023 and 8 April 2023. However, during that time period, the apartment was being renovated and no effort was made to re-rent it. Accordingly, Defendants should have represented that Plaintiff owed $7,251.21 instead of $9,339.21.

Nonetheless, Plaintiff has failed to show he suffered injury. Plaintiff never overpaid because of Defendants' error. Indeed, Plaintiff did not feel he owed any outstanding rent and failed to pay rent for five months. Nor did Defendants' error deceive. *See id.* at 496 (concluding no Debt Collection Act violation occurred because defendant failed to show injury).

Plaintiff argues he was harmed by Defendants' false representation because Defendants' debt was reported to the credit bureaus and his credit score was

"adversely affected." There is no record evidence, however, that any harm to Plaintiff's credit was caused by the fact that Defendants counterclaimed for an unpaid debt of $9,339.21 as opposed to $7,251.21. Further, Plaintiff failed to show any adverse impact on any specific attempt to open a new line of credit.

Accordingly, the trial court did not err by concluding that Defendants did not violate N.C. Gen. Stat. § 75-54(4) by misrepresenting the amount Plaintiff owed in their counterclaim.

### 3. *Fees*

Finally, Plaintiff argues that Defendants falsely represented to the trial court the amount of Plaintiff's debt by improperly charging him three fees, labeled "Court Fees" on the resident ledger, in excess of the "highest administrative fee authorized by" N.C. Gen. Stat. § 42-46.

N.C. Gen. Stat. § 42-46 governs the fees, costs, and expenses authorized in residential rental agreements. Under this statute, a landlord is permitted to charge the following administrative fees: a complaint filing fee, a court appearance fee, and a second trial fee. N.C. Gen. Stat. § 42-46(a)-(g) (2024). Additionally, a landlord is permitted to charge a tenant for out-of-pocket expenses for filing fees charged by the court, costs for service of process, and reasonable attorney's fees actually paid and not exceeding fifteen percent of the monthly rent stated in the lease. N.C. Gen. Stat. § 42-46(h)-(i) (2024). These out-of-pocket expenses may be included in the amount a landlord charges a tenant to cure a default. N.C. Gen. Stat. § 42-46(j) (2024).

The trial court made the following relevant findings of fact:

> 47. The last payment [to Defendants] in the amount of $3,484.11 was made by Plaintiff on August 16, 2022. No more payments were made by Plaintiff after August 2022.
>
> 48. [Defendants'] evidence which is uncontroverted is that Plaintiff failed to pay to Ginkgo Aurora LLC rent *and related charges* in the total amount of $7,251.21. [emphasis added].

These unchallenged findings of fact are binding on appeal. *See Carolina Marlin Club Marina Ass'n,* 238 N.C. App. at 220. Furthermore, the record evidence supports each finding of fact. On these facts, the trial court made the following conclusions of law:

> 6. Defendants did not violate the Prohibited Acts in the Debt Collectors Act, N.C. Gen. Stat. § 75-50, *et seq.* since Defendants were entitled to recover the rent sought from Plaintiff under the leases.
>
> 7. Defendants have proven their counterclaim by the greater weight of the evidence and the Plaintiff is liable to Ginkgo Aurora LLC for unpaid rent *and related charges* in the total amount of $7,251.21. [emphasis added].

As Defendants are entitled to recover "all litigation costs to the extent permitted by law" under the lease agreements, the fees Plaintiff alleges are improper are recoverable as out-of-pocket expenses under N.C. Gen. Stat. § 42-46(h)-(i).

The trial court's findings of fact support its conclusion that Plaintiff failed to show that Defendants improperly charged him fees in excess of what is authorized by N.C. Gen. Stat. § 42-46. Accordingly, the trial court did not err by entering judgment

for Defendants on this claim.

### III.    Conclusion

For the reasons stated above, we affirm the trial court's judgment.

AFFIRMED.

Judges CARPENTER and FLOOD concur.